Fremont-Smith, Thayer, J.
BACKGROUND
Plaintiff, William Passman (“Passman”) owns property abutting the site of an affordable housing project to be built on an approximately 2.97-acre parcel off Lowell Road in Lexington. This case is the latest phase in an ongoing plethora of litigation in which Passman has opposed the project. The procedural and factual background is as follows.
In January 2002, defendants RTD Greenhouse, LLC and Rising Tide, LLC (collectively “Rising Tide”) applied to the Zoning Board of Appeals for the Town of Lexington (“the Board”) for a comprehensive permit to build a 48-unit affordable housing project. During the ensuing review process, Rising Tide amended its proposal to 36 units. In February 2003, the Board granted, subject to a number of conditions, a comprehensive permit for 28 units to be distributed among 11 buildings. Two appeals, which were only resolved in 2008, followed the grant of this 2003 permit.
In the first appeal, thirteen abutters to the site, including Passman (“the abutters”) appealed the permit to the Superior Court under G.L.c. 40B, §21. In the second appeal, RisingTide appealed the conditions in the comprehensive permit to the Housing Appeals Committee (“HAC”) pursuant to c. 40B, §22. The Superior Court stayed the first abutters’ appeal pending resolution of the HAC appeal. The abutters then moved to intervene in the HAC appeal and, although permitted to participate as amici, they became extensively involved in the HAC appeal and submitted evidence and cross-examined witnesses.
On June 14, 2005, the HAC issued a decision directing the Board to issue an amended permit incorporating changes to the 2003 permit including an increase in the number of units to 36. The HAC also granted the abutters’ motion to intervene solely with respect to the issue of density. Following the HAC decision, the Board did not formally issue an amended permit, but rather, the decision became the action of the Board by operation of law after 30 days. This 2005 decision effectively amended the 2003 permit. Rising Tide then moved for summary judgment in the abutters’ c. 40B appeal, which was still pending in Superior Court. Judge Muse granted summary judgment on the grounds of mootness, as the permit at the center of the appeal — the 2003 permit — was no longer operative [Taylor v. Lexington Board of Appeals, 20 Mass. L. Rptr. 264]. Three abutter plaintiffs then appealed under c. 40B Judge Muse’s grant of summary judgment, which the SJC affirmed in Taylor v. Board of Appeals of Lexington, 451 Mass. 270 (2008) (“Taylor II).
Meanwhile, four interveners in the HAC appeal appealed the 2005 HAC decision in Suffolk Superior Court pursuant to G.L.c. 30A. Judge Kottmeyer denied the interveners’ appeal and affirmed the 2005 HAC decision, which was affirmed by the SJC in Taylor v. Housing Appeals Committee, 452 Mass. 149 (2008) (“Taylor I’). The 2005 amended comprehensive permit was thus upheld.
In preparing to apply for a building permit (following the SJC decisions), Rising Tide “fine-tuned” their construction plans and submitted the modifications to the Board on April 17, 2009. On May 14, 2009, the Board determined that the proposed changes were insubstantial.[2]
Passman then filed, on June 8, 2009, his “Complaint and Appeal Pursuant to Massachusetts G.L.c. 40A, §17 and G.L.c. 40B, §21, G.L.c. 231A; and G.L.c. 249, §4 and Prayer for Injunctive Relief,” challenging the Board’s approval of the 2009 modified permit.
Defendants move for summary judgment on Passman’s complaint on various grounds. They point out, correctly, that plaintiff cannot again challenge the provisions or validity of the underlying permit as the legality of that permit and pre-2009 amendments thereto have been fully litigated and upheld by the SJC. All that plaintiff has left to challenge is the Board’s unanimous approval of the 2009 modifica *386 tions to the permit, which the Board determined to be insubstantial.
Plaintiff points out that no c. 40B appeal was taken from the 2005 permit,[3] and argue that, because construction was not commenced within three years, the permit lapsed so that there was no permit in effect which the Board could “modify” in 2009.
Plaintiff argues that the SJC held, in Taylor, that the actions of a Board can only be appealed pursuant to c. 40B, so that the abutters’ appeal of HAC’s imposition of conditions to the 2005 permit pursuant to c. 30A did not delay finality of that permit. But defendants respond correctly that the underlying 2005 permit did not lapse due to defendants’ failure to commence construction within three years. The three-year period for starting construction under a comprehensive permit runs only from the date that a permit becomes “final.” 760 Code Mass. Regs. §56.05(12)(c). The date on which a permit becomes final is “the date the last appeal is decided or otherwise disposed of.” Id., §56.05(12)(a)).[4] In this case plaintiffs appeal pursuant to c. 40B of the Board’s original grant of the underlying comprehensive permit in 2003 and the abutters’ appeal of the Housing Appeals Committee’s decision ordering an amended comprehensive permit pursuant to c. 30B were not “disposed of’ until the Supreme Judicial Court issued its decisions in April 2008, so that the underlying permit will not lapse until April 2011. There were, following the 2005 permit approval, already two appeals pending regarding the permit for the project, which were not determined until April 2008. To require a developer such as defendant here to commence construction at its own risk before determination of those appeals, just because a third appeal, this time under c. 40B, was not taken from the 2005 amendment to the permit, would be an unreasonably constrictive construction of the finality provision of § 12(a) and place an unreasonable burden on a developer.[5] Accordingly, the Court rules that the 2005 permit, in these circumstances, did not lapse.
Defendants further argue that plaintiff lacks standing to appeal these modifications because plaintiff is not an “aggrieved person” as defined in the statute. They urge that the 2009 modified permit is less detrimental to plaintiff than was the original permit. Pass-man, however, has offered, by way of affidavit, credible expert testimony to the contrary. Because plaintiff, as an abutter, enjoys a rebuttable presumption of standing as an aggrieved person, Standewick v. Zoning Board of Appeals of Andover, 447 Mass. 20, 33 (2006), defendant cannot prevail at this stage on that basis.
But even though plaintiff has standing to challenge the Board’s decision to modify the permit, and even if plaintiff could prove that the modifications in the 2009 permit are detrimental to him, the question is not whether the modifications to the project will have an adverse impact on plaintiff, but rather whether there is any basis for this Court to substitute its judgment for that of the Board in regard to its approval of the modified permit. Judicial review of a Zoning Board’s decision is limited. A court cannot disturb a Board’s decision unless it was “based on a legally untenable ground, or [was] unreasonable, whimsical, capricious or arbitrary.” Britton v. Zoning Bd. of Appeals of Gloucester, 59 Mass.App.Ct. 68, 72 (2003), quoting MacGibbon v. Board of Appeals of Duxbury, 356 Mass. 635, 639 (1970); see also Jenson v. Zoning Bd. of Appeals of Ipswich, 450 Mass. 81, 95-96 (2007). Summary judgment is appropriate where the plaintiff has no reasonable expectation of proving that the Board’s decision is invalid. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711, 716 (1991); see Jepson, 450 Mass. at 96 (affirming summary judgment for comprehensive permit applicant when the facts as to alleged injury and as to the adequacy of the storm drain system were in dispute but the Board’s decision was not “based on a legality untenable ground, or is unreasonably whimsical, capricious, or arbitrary”). It is on this standard that the Court’s perusal of the Board’s 2009 actions must be made.
After an applicant obtains a comprehensive permit, the applicant is permitted to change the details of the project by submitting written notification to the Board. 760 Code Mass. Regs. §56.05(1 l)(a). If the Board determines that the changes are “insubstantial”; the comprehensive permit is deemed to be modified to incorporate the changes. Id., §56.05(11)(b). A list of matters generally considered “substantial” is set forth in 760 Code Mass. Regs. §56.07(4)(c), none of which have been raised by the plaintiff. In this case, moreover, the Board did hold a public meeting regarding the developers’ request, which the plaintiff attended. It thereafter unanimously approved, as insubstantial, the proposed changes to the housing development project.
After reviewing the Board’s decision and the summary judgment record, the Court concludes that the plaintiff has no reasonable expectation of proving that the Board’s decision is unreasonable, arbitrary, capricious, or the product of whimsical thinking. The housing project remains in large measure the same as it did prior to the modifications approved by the Board’s May 2009 decision. A comparison of the 2003 and 2009 plan maps reveals that the layout of the project is substantially unchanged. The total number of units approved by the amended comprehensive permits remains the same. Cf. 760 Code Mass. Regs. §56.07(4) (c)(2) (more than 10% increase in number of housing units deemed substantial). Although the units are now spread out over eleven rather than ten residential buildings, and the height of the buildings has been reduced, such changes are not analogous to the type of changes deemed substantial under the Department of Housing and Community Development’s regulations. See 760 Code Mass. Regs. §56.07(4)(c) (examples of substantial changes). With respect to the storm water management plan, the *387 Court notes that both the Housing Appeals Committee and the Board have conditioned their approval on the developers’ compliance with Department of Environmental Protection storm water standards.
While acknowledging that plaintiff has raised an issue of fact as to the potential negative impact of the permit’s modifications on the plaintiffs use and enjoyment of his property, such proof would still not justify this Court’s setting aside the Board’s decision, as the plaintiff would have failed to demonstrate, even with such proof, that the Board’s decision approving the project modifications was unreasonable, arbitrary, or not in accordance with law. Accordingly, the defendants’ motion for summary judgment shall be allowed.
ORDER
For the foregoing reasons and the additional detailed reasons stated in defendants’ memorandum in support and at argument, it is hereby ORDERED that the defendants’ motion for summary judgment is ALLOWED. Final judgment shall enter AFFIRMING the decision of the Lexington Board of Appeals and dismissing the plaintiffs complaint and appeal. Defendants’ other motions are DENIED as moot.[6]

 760 CMR §56.06 governs the comprehensive permitting process. One seeking a permit submits preliminary plans. Should plans change between approval and getting the building permit, the process is to submit the proposed changes to the Board for a determination that they are insubstantial. A public hearing is held only if the Board determines within 20 days that the proposed changes are substantial (and then the only issues at that hearing are the proposed changes). If the Board determines the proposed changes are insubstantial, the changes are automatically incorporated into the permit. The proposed changes included: dividing two larger buildings into three smaller ones; eliminating a freestanding garage that would have been built ten feet from Passman’s property: lowering parts of the roofline on certain buildings by ten feet; increasing patio dimensions for certain units: and changes to the stormwater collection system.

 As noted above, the abutters appealed pursuant to c. 30A.

“(c) Lapse oj Permits. If construction authorized by a Comprehensive Permit has not begun within three years of the date on which the permit becomes final except for good cause, the permit shall lapse. This time period shall be tolled for the time required to pursue or await the determination on any appeal on any other state or federal permit or approval required for the Project.”
“(a) Finality of Permits. A Comprehensive Permit shall become final on the date that the written decision of the Board is filed in the office of the municipal clerk, if no appeal is filed. Otherwise, it shall become final on the date the last appeal is decided or otherwise disposed of, provided however that if a Comprehensive Permit is issued by the Board or the Committee and is subsequently subject to legal appeal, an Applicant may elect to proceed at risk with construction of the Project.”

In this regard, §42(c) tolls the lapse of any other state or federal permit “for the time required to pursue or await the determination on any appeal on any other statute or federal permit or approval required for the Project.” The Court concludes that §12(a) should not be construed more restrictively in these circumstances.

Those are: defendant Rising Tide’s motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(1) and 12(b)(6); defendant Rising Tide’s motion to strike portions of affidavit of Virginia Johnson: defendant Rising Tide’s motion to strike plaintiffs response to Rising Tide’s statement of facts and plaintiffs statement of additional facts insofar as these are offered in response to Rising Tide’s motion to dismiss: plaintiff Passman’s motion to strike affidavit of John P. Gwozdz and defendant Rising Tide’s motion for expedition.