78 Mass. App. Ct. 19 (2010)                                  19

Shirley Wayside Limited Partnership v. Board of Appeals of Shirley.

## SHIRLEY WAYSIDE LIMITED PARTNERSHIP *vs.* BOARD OF APPEALS OF SHIRLEY.

No. 09-P-1375.

Suffolk. April 6, 2010. - October 6, 2010.

Present: RAPOZA, C.J., LENK, GREEN, BROWN, & GRAINGER, JJ.[1]

Further appellate review granted, 458 Mass. 1108 (2010).

*Zoning,* By-law, Judicial review, Mobile home, Nonconforming use or structure, Setback.

A Land Court judge erred in concluding that a decision of the defendant town zoning board of appeals, denying the plaintiff's application for a permit to expand a lawfully nonconforming use by adding fourteen mobile home units to an existing, sixty-five unit mobile home park, was arbitrary and capricious, where the board's concern for increased density furnished adequate justification for its decision denying the permit. [21-24] BROWN, J., dissenting, with whom GRAINGER, J., joined.

CIVIL ACTION commenced in the Land Court Department on November 1, 2005.

The case was heard by *Keith C. Long,* J.

*Ellen Callahan Doucette* for the defendant.

*Julie A. McNeill* for the plaintiff.

GREEN, J. After a trial, a judge of the Land Court concluded that the board of appeals of Shirley (board) abused its discretion in denying the application of Shirley Wayside Limited Partnership (Wayside) to expand a lawfully nonconforming use by adding fourteen units to an existing sixty-five-unit mobile home park. The board appeals.[2] We reverse.

---

[1]This case was initially heard by a panel comprised of Justices Green, Brown, and Grainger. After circulation of the opinion to the other justices of the Appeals Court, the panel was expanded to include Chief Justice Rapoza and Justice Lenk. See *Sciaba Constr. Corp.* v. *Boston,* 35 Mass. App. Ct. 181, 181 n.2 (1993).

[2]The town of Shirley was also named in the complaint, but the judge dismissed all claims against it with prejudice, and Wayside does not appeal from those dismissals.

Wayside owns and operates a mobile home park on approximately twenty acres containing sixty-five "single wide" mobile homes.[3] The park is partially located in a residence 3 (R3) zoning district and partially in a residential rural (RR) zoning district.[4] The park has existed in substantially the same form since the 1950's. Wayside now seeks to replace one of the mobile homes, which has been abandoned, with a "double wide" unit of approximately twenty-four by forty-six feet and place an additional fourteen double wide units on the property.

In 1960, the town's board of health adopted "Regulations Governing Mobile Home Parks." The regulations require a license from the Nashoba regional health district board of health to operate a mobile home park of three or more mobile homes and govern area, frontage, and setback requirements for individual mobile homes located in the park, among other things. The proposed expansion will comply with the board of health regulations. The existing units, however, do not comply with all of the area and setback requirements contained in the regulations.

In 1985, the town amended its protective zoning by-law (by-law) and deleted mobile home parks as a permitted use in all zoning districts. Wayside's park currently operates, therefore, as a lawful nonconforming use. See G. L. c. 40A, § 6; § 2.8.1 of the by-law. Pursuant to § 2.8.4 of the by-law, nonconforming uses "may be extended, altered, reconstructed or repaired, provided any such extension shall not exceed twenty-five percent (25%) of its area on said lot as of June 16, 1988, and that in each case the Board of Appeals, in accordance with the procedures of § 9.2.3 hereof, shall find that such extension, alteration, reconstruction or repair is not substantially more detrimental to the neighborhood than the existing non conforming structure or use." See also G. L. c. 40A, § 6.[5]

In denying Wayside's application for a permit to expand its

---

[3]The mobile homes range in size from twelve by fifty-six feet to twelve by seventy plus feet.

[4]Minimum lot area is 15,000 square feet in the R3 district and 80,000 square feet in the RR district.

[5]General Laws c. 40A, § 6, inserted by St. 1975, c. 808, § 3, provides in pertinent part that "[p]re-existing nonconforming structures or uses may be extended . . . provided, that no such extension . . . shall be permitted unless there is a finding by the permit granting authority or the special permit granting

nonconforming use, the board considered: (i) that present zoning regulations prohibit trailers in Shirley; (ii) "the impact of the additional residents on the area and the infrastructure of the Town of Shirley, in particular the possible economic burden on the school system, as the tax base for trailer units is much less than the tax base for residential homes"; (iii) the encroachment on the wetlands and the density of the existing area and expansion area; (iv) the proximity of the proposed 24.9 percent expansion to the twenty-five percent allowed under § 2.8.4, leaving no room for error; and (iv) "the detrimental aspects to the neighborhood regarding density, groundwater runoff, property devaluation to the abutters and the heavy amount of traffic already on the road." The board voted to deny the application "for the reason that the Petitioner did not satisfy the burden that this expansion will not be more substantially detrimental to the neighborhood due to the density of the expansion and the encroachment of the 25% rule."[6]

Following a trial de novo, the Land Court judge addressed each of the reasons offered by the board in denying the permit, concluding that no reasonable board could have drawn the same conclusions and that, accordingly, the board's decision was arbitrary and capricious. The judge vacated the decision and remanded with instructions to issue a § 2.8.4 permit.

*Discussion.* General Laws c. 40A, § 17, governs appeals from the denial of an application to expand a prior nonconforming use. In reviewing a question of substantial detriment, "the court must find the facts de novo and give no weight to those the board has found." *Britton* v. *Zoning Bd. of Appeals of Gloucester*, 59 Mass. App. Ct. 68, 72 (2003). Whether the proper criteria and standards were applied by the board is primarily a question of law for the court with " 'some measure of deference' to the local board's interpretation of its own zoning bylaw." *Id.* at 73, quoting from *APT Asset Mgmt., Inc.* v. *Board of Appeals of Melrose*, 50 Mass. App. Ct. 133, 138 (2000). The

authority . . . that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood."

[6]The board decision includes the reasons given by individual board members for voting to deny the permit as follows: the project would devalue other properties in the area; it would be more detrimental to the neighborhood; it is too close to the twenty-five percent rule and too dense; and one stated she simply did not want any more trailers.

standard applicable to the board's exercise of its discretionary authority to grant or deny a permit is considerably more deferential, however. "Assuming that the board has drawn on proper criteria and standards, the court . . . must determine, on the basis of the facts it has found for itself, whether the board has denied the application by applying those criteria and standards in an 'unreasonable, whimsical, capricious or arbitrary' manner." *Id.* at 74. "[T]he board's discretionary power of denial extends up to those rarely encountered points where no rational view of the facts the court has found supports the board's conclusion that the applicant failed to meet one or more of the relevant criteria found in the governing statute or by-law." *Id.* at 74-75.

Our review of the record reveals that the judge correctly concluded that the evidence before him did not support the board's expressed rationale in many respects. That the proposed expansion approaches but does not exceed the twenty-five percent limitation allowed under the by-law is no reason in and of itself to deny the permit.[7] In addition, the park is restricted to persons of age fifty-five and over. Although only one member of a family must be aged fifty-five to qualify, the only evidence on the issue at trial supported the judge's conclusion that it was unlikely there would be a significant number of school-aged children occupying the additional units. The evidence showed that, at least in 2003, among the sixty-four existing units, only four children resided in the park. The board's concerns about the impacts on the school system were speculative at best.[8]

The record further supports the findings that Wayside builds and maintains its own roads, is responsible for snow removal, and contracts for its own trash removal. In addition, the record supports the judge's finding that the abutting public way, Clark Road, currently is not heavily traveled and that the expansion would have little effect on it. We agree with the judge that the

[7] We agree with the judge that there is no evidence in the record that, under any analysis, the proposed expansion exceeds the twenty-five percent limitation set forth in the by-law.

[8] As observed *infra*, we need not decide in the present case whether impacts on the town's tax burden or school system are proper criteria for denial of a special permit for expansion of a nonconforming use. There is no evidence in the record to suggest that an increase in the number of children living in the trailer park would cause substantial detriment to the neighborhood.

board's vague reference to concern for the nearby wetlands was unwarranted, based on the judge's findings that all applicable buffer zones and "do not disturb" zones would be met and that the project would be subject to review by the conservation commission. Similarly, there was no evidence that the values of the surrounding properties would be adversely affected by the expansion. Indeed, the only evidence presented to the judge was that there would be no impact on value.

To the extent that the nominal amount of taxes paid by the individual mobile home owners properly may be considered in making a zoning decision, a question we need not decide, the board seemed to ignore the substantial additional property tax paid by Wayside for the entire property. In any event, the board's argument on appeal that the expansion would cause a strain on the fire, police, ambulance, and road maintenance services of the town without a corresponding tax burden is specious on the facts found by the judge. We agree with the judge that none of the foregoing reasons cited by the board supports the denial of Wayside's application. We nonetheless conclude that the board's concern for increased density furnished adequate justification for its decision to deny the permit.

As a threshold matter, we observe that the proposed plan does not comply with applicable frontage and setback requirements in the relevant residential zoning districts. In *Cox* v. *Board of Appeals of Carver*, 42 Mass. App. Ct. 422, 426 (1997), this court reaffirmed that pursuant to G. L. c. 40A, § 6, an extension of a nonconforming use must comply with the zoning ordinance or by-law in addition to the requirement that the extension not be substantially more detrimental to the neighborhood. Wayside's effort to treat the setback requirements set forth in the board of health regulations as somehow superseding the more stringent regulations applicable under the by-law in the relevant zoning district is unsupported by authority and inapposite; under *Cox*, a proposed expansion of a nonconforming use must not create new dimensional nonconformities, or exacerbate existing ones, under currently applicable *zoning* regulations. *Ibid.*

Moreover, the proposed expansion will add fourteen units to a mobile home park, the existing developed portion of which is already more dense than allowed under the board of health

regulations, and significantly more dense than the single-family use allowed under the zoning by-law.[9] That the by-law authorizes the board to permit expansion of a nonconforming use if the expansion does not exceed twenty-five percent does not compel a finding that the expansion is not substantially more detrimental to the neighborhood than the existing use. As this court has observed, the board has discretion to deny a permit application even if the facts found by the court would support its issuance. See *Britton* v. *Zoning Bd. of Appeals of Gloucester*, 59 Mass. App. Ct. at 74. There is no dispute that the proposed expansion would result in a significant increase in the project's density, or that density is within the scope of concerns the board is permitted to consider. Zoning is a distinctly local matter, and in circumstances where reasonable minds may differ concerning the seriousness of a problem, it is the board's conclusion, rather than that of a distant court, that controls. See *Copley* v. *Board of Appeals of Canton*, 1 Mass. App. Ct. 821 (1973); *Dowd* v. *Board of Appeals of Dover*, 5 Mass. App. Ct. 148, 154 (1977); *Subaru of New England, Inc.* v. *Board of Appeals of Canton*, 8 Mass. App. Ct. 483, 488 (1979). We conclude that the board acted within its authority in denying the requested permit based on concerns for the increased density that it would produce.

*Judgment reversed.*

BROWN, J. (dissenting, with whom Grainger, J., joins). The proper inquiry remains " 'whether, on the facts the judge has found, any rational board could conclude' that the additional" fourteen mobile homes "would be substantially more detrimental to the neighborhood" than the existing sixty-four mobile homes. *Cumberland Farms, Inc.* v. *Zoning Bd. of Appeals of Walpole*, 61 Mass. App. Ct. 124, 131 (2004), quoting from *Britton* v. *Zoning Bd. of Appeals of Gloucester*, 59 Mass. App. Ct. 68, 74 (2003). I agree with the judge that none of the reasons cited by the board supports the denial of the application.

[9]Indeed, the board's "reliance on the undesirable enlargement of the existing nonconformity that would result from the plaintiffs' proposed project" may alone be adequate to sustain its decision. *Davis* v. *Zoning Bd. of Chatham*, 52 Mass. App. Ct. 349, 357 (2001).

The board contends that the judge erred because the proposed plan does not comply with the setback and frontage requirements for single-family homes in the residential zones at issue. It is true that in *Cox* v. *Board of Appeals of Carver*, 42 Mass. App. Ct. 422, 426 (1997), this court reaffirmed that pursuant to G. L. c. 40A, § 6, an extension of a nonconforming use must comply with the zoning ordinance or by-law in addition to the requirement that the extension not be substantially more detrimental to the neighborhood. For example, in *Cox*, expansion of a mobile home park onto a newly acquired 2.53-acre adjacent lot was prohibited where the zoning by-law at issue required a minimum lot size of 100 acres for the operation of a mobile home park. Here, however, the proposed expansion is on the original lot and there is no suggestion that it is undersized. As for the setback and frontage requirements, so far as the record reflects, the setback and frontage requirements for single-family homes have never been applied to mobile homes in a mobile home park in the town. There is no suggestion in the record that the board of appeals determined that lot area and setback requirements other than those set forth in the board of health regulations apply to each individual mobile home in the park. The town has controlled frontage and setbacks in mobile home parks through the board of health regulations and the proposed expansion complies with those regulations. I discern no error, therefore, in the judge's refusal to apply the setbacks for single-family homes in the district.

I particularly disagree with the majority's treatment of the issue of density, on which the board's purported reliance, in my view, is fatally vague.

I recognize that the proposed expansion will add fourteen units to a mobile home park, the existing developed portion of which is already denser than allowed under the board of health regulations. Pursuant to the local by-law, however, expansion of a nonconforming use is permitted provided it does not exceed twenty-five percent of its area on the lot and there is a finding that the expansion is *not* substantially more detrimental to the neighborhood than the existing use. The proposed expansion does not exceed the twenty-five percent density limitation and the board has failed to express in any meaningful way how the

addition of fourteen units will be substantially more detrimental to the neighborhood than the existing sixty-four units in terms of density or in any other regard.

No abutter testified at trial in opposition to the expansion. While the plan shows that the units will be closer than the existing units to three abutters, the judge found that the new mobile homes will be well screened by trees and other buffers. The board's unexplained reference to density, albeit a concern within the scope of the zoning statutory scheme, fails to bring the decision out of the realm of arbitrary and capricious, particularly where the by-law itself establishes a maximum density for expansion of nonconforming uses.

Finally, I do not agree with the board's argument that it may deny a permit based on its desire to prevent any additional mobile homes simply because the use has been eliminated from the allowed uses throughout the town. In considering an application for a special permit to expand a nonconforming use, we said in *Davis* v. *Zoning Bd. of Chatham*, 52 Mass. App. Ct. 349, 357 (2001), that "reliance on the undesirable enlargement of the existing nonconformity that would result from the plaintiffs' proposed project would itself be sustainable."[1] There, however, the board had found that the expansion of a pier would result in the loss of boat moorings and would significantly increase the impediment to the harvesting of shellfish. *Id.* at 353-354. There was evidence, therefore, to support the conclusion that the undesirable enlargement of the nonconformity would be substantially more detrimental to the neighborhood than the existing nonconformity. Here, even if we were to assume that a desire to eliminate uses no longer allowed in the town is a proper criteria to consider in reviewing an application under § 2.8.4, where the evidence demonstrates that there will be no substantial impacts on the value of the neighboring properties, traffic, infrastructure or other zoning concerns, denial is improper in the absence of any evidence to support a finding that the expansion would be substantially more detrimental to the neighborhood than the existing use.

---

[1]In *Davis* v. *Zoning Bd. of Chatham*, 52 Mass. App. Ct. 349 (2001), the panel did not consider whether there was a difference between a special permit for expansion of a nonconforming use and a regular special permit.

In sum, the record reveals that the evidence before the judge does not support the rationale relied on by the board in many respects. That the proposed expansion approaches but does not exceed the twenty-five percent limitation allowed under the by-law is no reason in and of itself to deny the permit. Moreover, even the majority acknowledges that the board's concerns about the impact on the school system were disingenuous at worst and speculative at best.