NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-28                                            Appeals Court


ANTHONY PELULLO, trustee,[1] vs. PAUL R. CROFT & another.[2]



No. 13-P-28.     October 22, 2014.



Zoning, Board of appeals:  decision, Building inspector,
     Issuance of permit, Judicial review, Lot.  Practice, Civil,
     Zoning appeal, Summary judgment.  Words, "Lot depth."


     The sole issue before us is the correct interpretation of a
provision of the town of Natick's (Natick) zoning by-law which
requires a minimum lot depth of 125 feet for the construction of
a single family home in a residential zoning district known as
an "RSA" district.  Natick Zoning Bylaws, Table IV-B, Intensity
Regulations by Zoning District (2008) (by-law).  The term "lot
depth" is not defined in the by-law. However, the by-law
provides that undefined terms "shall have their ordinarily
accepted meanings or such as the context may imply."  For
substantially the same reasons stated by the Land Court judge in
his memorandum of decision allowing the plaintiff's motion for
summary judgment, we affirm.[3]

---

     [1] Of the Pelullo Family Nominee Trust.

     [2] Board of Appeals of Natick.

     [3] For the first time on appeal, Croft argues that the by-law
in question is void for vagueness.  We decline to consider the
question because "[a]n issue not raised or argued below may not
be argued for the first time on appeal."  Carey v. New England
Organ Bank, 446 Mass. 270, 285 (2006), quoting from Century Fire
& Marine Ins. Corp. v. Bank of New England-Bristol County, N.A.,
405 Mass. 420, 421 n.2 (1989).

The essential facts are not in dispute.  On July 12, 2010, the defendant, Paul R. Croft, applied to Natick's building inspector for a permit to construct a single family home at 15 Upland Road in Natick (lot 1A).  The plaintiff, an abutter, filed an opposition on grounds that lot 1A did not meet the by-law's minimum 125 foot lot depth requirement.  The building inspector issued the permit reasoning that in cases involving "odd-shaped lots," the "depth is determined by established practices and procedures of the Building Department which involve a calculation of lot depth on an angle in conjunction with a determination as to satisfaction of all other applicable dimensional requirements."  The board of appeals of Natick (board) affirmed the building inspector.

The meaning of the term lot depth as used in the by-law "is a question of law . . . to be determined by the ordinary principles of statutory construction."  Framingham Clinic, Inc. v. Zoning Bd. of Appeals of Framingham, 382 Mass. 283, 290 (1981).  Here, the by-law specifically states that undefined terms "shall have their ordinarily accepted meanings or such as the context may imply."  This provision is not a license to give undefined terms in a municipal by-law a meaning that suits the personal views of those charged with its enforcement.  Rather, in such cases an undefined term like lot depth must be given "a reasonable construction."  Kramer v. Zoning Bd. of Appeals of Somerville, 65 Mass. App. Ct. 186, 191-192 (2005), quoting from Capone v. Zoning Bd. of Appeals of Fitchburg, 389 Mass. 617, 622 (1983).  "We derive the words' usual and accepted meanings from sources presumably known to the [by-law's] enactors, such as their use in other legal contexts and dictionary definitions."  Framingham Clinic, Inc., 382 Mass. at 290, quoting from Commonwealth v. Zone Book, Inc., 372 Mass. 366, 369 (1977).  See Tanner v. Board of Appeals of Boxford, 61 Mass. App. Ct. 647, 649-650 (2004).  The standard dictionary definition of depth is "the measurement from . . . the front to the back."  Concise Oxford Dictionary, at 363 (9th ed. 1995).  See Webster's Third New Intl. Dictionary, at 607 (2002) (defining depth as "the direct linear measurement from the point of viewing, from the usual position of an observer, or toward the back from a position usually considered the front").

Croft contends that we should show great deference to the interpretation of a by-law by local officials, and, in this case, accede to what the building inspector described as his "established practice" of measuring the depth of an "odd-shaped" piece of land on a diagonal.  The judge properly rejected this

argument as a misreading of Britton v. Zoning Bd. of Appeals of Gloucester, 59 Mass. App. Ct. 68, 73-77 (2003), on which Croft relies.  Review of a board's decision under G. L. c. 40A, § 17, "involves a 'peculiar' combination of de novo and deferential analyses."  Wendy's Old Fashioned Hamburgers of New York, Inc. v. Board of Appeal of Billerica, 454 Mass. 374, 381 (2009).  In the setting of a G. L. c. 40A, § 17, appeal, a court owes deference to the interpretation of a zoning by-law by local officials only when that interpretation is reasonable.  See Shirley Wayside Ltd. Partnership v. Board of Appeals of Shirley, 461 Mass. 469, 475 (2012).[4]  "[A]n 'incorrect interpretation of a statute . . . is not entitled to deference.'"  Ibid., quoting from Atlanticare Med. Ctr. v. Commissioner of the Div. of Med. Assistance, 439 Mass. 1, 6 (2003).

Neither the building inspector nor the board explained why a diagonal measurement of lot depth was consistent with the ordinary meaning of that term, and failed to offer any reasoned basis for measuring lot depth based on a diagonal line.  As the judge found, lot 1A is not oddly shaped.  Lot 1A is more or less rectangular in shape with front and rear lot lines of about 170 feet, and side lot lines that vary from about eighty-six feet to seventy-one feet.  The use of a diagonal line to measure the depth of a rectangular lot is contrary to the ordinary and accepted meaning of the term lot depth.  It is thus an incorrect interpretation of the by-law, and is not entitled to judicial deference.  Even weaker is the building inspector's bald assertion of an established practice using a diagonal line to measure the depth of lots regarded as oddly shaped.  There is no evidence in the record to support the claim.  Moreover, in the absence of any objective standard for determining what constitutes an "odd-shaped lot," the use of such a criteria

---

[4] In Britton, supra at 73-74, we explained that judicial review of a local board decision on an application for a variance or special permit under G. L. c. 40A, § 6, involves two inquiries: first, whether the local board has chosen the correct legal standard in deciding to grant or deny the application; and second, whether that standard was properly applied to the particular facts and circumstances of the case.  It is only after the court decides that the local board chose the correct legal standard that the court's review becomes "highly deferential" because the local board is in the best position to assess whether the proposed addition or alteration "would be substantially more detrimental to the neighborhood than the existing structure."  Id. at 74.

would lead to arbitrary and idiosyncratic results.  As the judge explained in his well-reasoned decision, "'[t]he right of the public to have the zoning by-law properly enforced cannot be forfeited by the actions of a municipality's officers.  Nor can a permit legalize a structure or use that violates a zoning by-law.'  [Building Commr.] of Franklin v. Dispatch [Communications] of New England, Inc., 48 Mass. App. Ct. 709, 715 (2000) (internal citations and quotations omitted)."

The final question we must address stems from the fact that during the pendency of this case, lot 1A, on which a single family home was constructed by Croft, was combined with two other parcels which adjoin it and then sold to a third party.  The judge was correct in concluding that this development did not render the controversy moot because there was no change in the by-law.  See Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 419 (1992).  The judge correctly applied the same analysis to the reconfigured lot 1A as he did to the original lot 1A to reach the same result.  The reconfigured lot is approximately 509 feet long, but no more than 86.1 feet wide at any point except in the 40 feet at its extreme northern end, which has a "tail."  Only a sliver of the property has more than 125 feet of distance between the front and rear lot lines (approximately 40 feet of the 509 feet of frontage).  As the judge found, "[t]he shortest distance between the front and rear lot lines still measures 70.9 feet.  Similarly, the mean horizontal distance between the front and rear lot lines of the reconfigured lot is no more than 94 feet."  Based on a definition of lot depth as either the "shortest" distance front to back or the "mean" distance front to back, the reconfigured lot fails to meet the requirements of the by-law.

Judgment affirmed.


George F. Connors for Paul R. Croft.
Peter S. Brooks (Zachary W. Berk with him) for the plaintiff.