Berry, J.
(dissenting). While I recognize full well the broad discretionary powers vested in local zoning boards to grant or deny applications for special permits, and the highly deferential nature of our review of the board’s interpretations of its own ordinances, a board’s discretion is not limitless, and as applied to this case, I do not accept, and cannot give deference to, the fatally vague and cursory decision of the Lenox zoning board of appeals (board), which, from all that appears, was tantamount to an unbridled and arbitrary conclusion that the board simply did not want this project to move forward. On this record, I find no basis in fact, and thus no support, for the board’s denial of the application of Buccaneer Development, Inc. (Buccaneer), for a special permit. Accordingly, I respectfully dissent.
I turn first to the applicable section of the town of Lenox zoning by-law (by-law). Section 6.1.1 of by-law requires as follows:
“Before granting a special permit for any use requiring such permit under the provisions of this By-law, the [bjoard [must] find that the proposed use:
“(a) Is in compliance with all provisions and requirements of this Bylaw, and in harmony with its general intent and purpose;
*877 “(b) Is essential or desirable to the public conveniences or welfare at the proposed location;
“(c) Will not be detrimental to adjacent uses or to the established or future character of the neighborhood;
“(d) Will not create undue traffic congestion, or unduly impair pedestrian safety; [and]
“(e) Will not overload any public water, drainage or sewer system . . . .”
The majority seeks to uphold the board’s denial of the special permit on the basis of the first three criteria in § 6.1.1 of the by-law, or as the majority writes, the three “more subjective factors.” Ante at 874. To this end the majority opinion holds that “[t]he board’s denial of the special permit was firmly grounded in its assessment that the proposed use failed to meet these criteria,” and that “[t]he facts found by the trial judge provide support for the board’s determination.” Id. at 875.
To the contrary, based on my review of the record, I believe the board’s reasoning stood on far more untenable ground. The board gives us only the following in support of its conclusory denial of Buccaneer’s application for a special permit:
“[T]he proposed development was unduly dense and would be detrimental to the established ‘small town’ character of the neighborhood,” “violated the spirit of the Bylaw . . . because it was neither essential nor desirable to the public welfare,” “would be detrimental to adjacent uses and the established character of the neighborhood,” and “was simply too dense and too out-of-character with its surroundings.”
These specious conclusions, which, in my view, consist of merely a summary recitation of the criteria found within § 6.1.1 of the by-law, without citation to any fact, finding, or reasoned analysis, are “legally untenable.” Britton v. Zoning Bd. of Appeals of Gloucester, 59 Mass. App. Ct. 68, 73 (2003). For me, what is missing from the board’s decision, for example, is any explanation or reasoning as to why Buccaneer’s proposed project was neither essential nor desirable to the public welfare, or how the project was detrimental to the small town character of the neighborhood, or what aspects of the project would be detrimental to adjacent uses. “When a decision contains conclusions that do *878 nothing more than repeat regulatory phrases, and are unsupported by any facts in the record, we are constrained to conclude that the decision is ‘unreasonable, whimsical, capricious or arbitrary,’ and therefore invalid.” Wendy’s Old Fashioned Hamburgers of N.Y., Inc. v. Board of Appeal of Billerica, 454 Mass. 374, 386 (2009) (Wendy’s), quoting from Roberts v. Southwestern Bell Mobile Sys., Inc., 429 Mass. 478, 486 (1999). That, in my view, is the correct assessment of the record and the necessary conclusion in this case.
Other reasons offered by the board for denying Buccaneer’s special permit stand in direct conflict with the specific findings of the trial judge. For example, as the majority acknowledges, one member of the board stated that the project was “unduly dense.” The trial judge, however, specifically found that “the density of the proposed project is well within the requirements . .. and were density the only issue herein, there would be no basis for denying the special permit.”
Even accepting, as I do, the “ ‘peculiar’ combination of de novo and deferential analyses,” Wendy’s, 454 Mass, at 381, involved in the lower court’s review of the board’s decision, it seems apparent, on this record, that the trial judge gave far too much deference to the board’s conclusions. As previously noted, there is an antidevelopment flavor to the board’s decision. From all that appears, the reasons provided by the board, unsupported by the evidence, and summarily accepted by the majority, could be read simply to indicate that the board preferred that the land at issue remain undeveloped. Given the speculative nature of the board’s rationale, it appears that the trial judge could have conducted, and, in my view, was indeed required to conduct, a more exhaustive review of the facts behind the board’s stated reasons for denying Buccaneer’s application for a special permit.
That is indeed why we have the important judicial function of review under G. L. c. 40A, § 17, so that a trial judge may make independent findings of fact, and then determine whether “the reasons given by the board [had a] ‘substantial basis in fact,’ [or were, on the contrary,] ‘mere pretexts for arbitrary action or veils for reasons not related to the purposes of the zoning law.’ ” Shirley Wayside Ltd. Partnership v. Board of Appeals of Shirley, 461 Mass. 469, 475 (2012), quoting from Vazza Properties, Inc. v. City Council of Woburn, 1 Mass. App. Ct. 308, 312 (1973).
I add that the board’s arbitrary denial of Buccaneer’s special permit, in my view, reflects the as-applied vague and standardless *879 nature of the by-laws at issue. “[L]ocal by-laws must provide adequate standards for the guidance of the board in deciding whether to grant or withhold special permits.” Josephs v. Board of Appeals of Brookline, 362 Mass. 290, 294 (1972).
Finally, I find troublesome the summary manner in which the Housing Court judge, i.e., trial judge, sitting by special cross designation, adopted her prior findings, word for word, without conducting any further hearing in the permit session of the Land Court. Buccaneer expressly reserved objection to the Housing Court retaining jurisdiction, with the same judge sitting as the presiding trial judge on remand from this court in Buccaneer Dev., Inc. v. Zoning Bd. of Appeals of Lenox, 83 Mass. App. Ct. 40 (2012).[1]
It may be that this cross designation procedure between the Housing Court and the permit session of the Land Court, as in this case, is an emerging intra-court development. See Skawski v. Greenfield Investors Property Dev., LLC, 87 Mass. App. Ct. 903, further appellate review granted, 472 Mass. 1103 (2015) (holding that, under G. L. c. 185, § 3A, the Housing Court lacked subject matter jurisdiction over the abutters’ G. L. c. 40A appeal from the grant of a special permit in a case where the Housing Court judge [coincidentally, the same Housing Court judge as in the instant Buccaneer appeal] sought to have the case administratively transferred from the Housing Court to the Superior Court and also requested cross designation and assignment to the case).
It may be that adopting this practice as a common procedure, designating the Housing Court judge who had initially tried the case, to sit as a special justice in the permit session of the Land Court, is an appropriate common Trial Court transfer vehicle. Or, it may be that such cross designation should be an exceptional mode for litigation in the permit session of the Land Court. To be considered perhaps is the specialized judicial function of the Land Court permit session and the clear legislative intent in G. L. c. 185, § 3 A, to grant original jurisdiction over these matters only to the permit session of the Land Court or the Superior Court.[2] These are court administration issues that may be beyond the *880 scope of this dissent. And, the standards for this kind of cross designation might be appropriate for review in the Supreme Judicial Court under G. L. c. 211, § 3. But, I emphasize that Buccaneer did preserve its jurisdictional objection. See note 1, supra, and accompanying text.
The majority ultimately determines, see ante at 875-876, that what was, in effect, a “veto” of Buccaneer’s special permit is saved because there was a finding of some sort of “tipping point,” calibrated by the judge after a view of the subject property. The majority quotes as follows:
“[Tjhere now exists 23 acres of open land, abutting 68 acres of similarly open land immediately to the north; the overall impression is one of open space, pasture, and indigenous vegetation. Were the project to go forward, there would be 23 single family homes, similar in appearance, clustered around a parkway in a manicured setting.... [F]rom the perspective of the immediate neighborhood, the Buc[c]aneer project would represent a[ ] substantial change in the appearance and feel’ of the area. At some point, development in an area reaches a ‘tipping point;’ the fact that past development has not been viewed as incompatible with the neighborhood does not mean that incremental additional development must always be viewed similarly.” (Emphasis supplied.)
*881 Ibid. The problem with this purported “tipping point”-based analysis is that it is nothing more nor less than a wholly subjective commentary by the G. L. c. 40A reviewing judge that Buccaneer’s project would alter the “feel” of the surrounding area. Indeed, the vagary of the word “feel” only reinforces the entirely subjective analysis here, which is not grounded in zoning law or the requirements of G. L. c. 40A review. What does it mean to “feel” a project is not too dense in an area, or, conversely, to “feel” a development project is too dense? What we have here, at the end of the day, is a “tipping point”/“feel.” My research has discovered no other case under G. L. c. 40A in which the words “tipping point” or “feel” govern. If the future of special permit reviews were to turn on such inchoate expression, then G. L. c. 40A appeal and review would be standardless and virtually meaningless to the special permit applicant.
For the foregoing reasons, I would vacate the judgment and remand this matter once again to the Land Court, for an independent review of the board’s decision denying Buccaneer’s application for a special permit.

Having preserved this jurisdictional challenge, to be noted is that Buccaneer did then agree to have the case presented on the extant record — not an unreasonable litigation strategy, I think.

A number of errors occurred in the handling of this case, which are troubling, (a) The docket. The final judgment states that it was entered on April 8, 2014, but the docket provided to us shows an entry on April 4, 2014, “entering new judgment.” No document has been provided to us that would *880 correspond to a judgment entered on April 4. (b) The decision on appeal. In her 2010 decision, sitting in the Housing Court, the trial judge correctly noted that, while the case originally also involved an appeal from the planning board of Lenox’s denial of an application for a special permit under a different section of the by-law, “[t]hat aspect of the dispute has been resolved . . . and is not . . . before the court.” But, inexplicably, in 2013, sitting by designation in the permit session of the Land Court, in an order for judgment, the judge stated (erroneously), “In reviewing the record, it appears that the parties, this court, and the Appeals Court have all, at various times, misidentified the defendant as the Zoning Board of Appeals. The original pleadings and docket make clear, however, that the named defendants are the Planning Board for the Town of Lenox, and the members thereof. Any references to the defendant as the Zoning Board of Appeals are hereby corrected as scrivener’s errors.” The judge’s 2013 error was carried forward to the final judgment, from which Buccaneer purports to appeal, and which states, “Judgment shall enter in favor of the defendants, affirming the decision of the Planning Board for the Town of Lenox dated December 21, 2007, which denied a special permit to the plaintiff Buccaneer Development, Inc.” In fact, Buccaneer did not pursue an appeal from the planning board’s decision, which, in any event, does not appear in the record appendix. We have corrected the judge’s error in our disposition of this case. See ante at 876 & note 5.