Leibensperger, Edward P., J.
I. Introduction
In 1985, when a plan for the development of approximately 85 acres of land in the town of Tyngsborough (the “Town”) was approved by issuance of a special permit, a condition was imposed by the planning board of the Town with respect to the approval. The condition was that “no future development shall be allowed on this PUD site which will increase the density of development or number of occupants over what is allowed by this plan” (the “Condition”). This litigation concerns the effort by the current owner of a 25-acre portion (the “Property”) of the site to obtain a modification of the Condition so as to allow further development. The case raises issues of standing, ripeness, lawfulness of the Town planning board’s actions and, ultimately, the appropriate process for resolution of the interests and concerns of all relevant parties.
The current owner of the Property is Gray Wolf Really, LLC (“Gray Wolf’).[4] In 2007, twenty-two years after the Town’s approval of the original development plan, Gray Wolf applied to the planning board to modify the 1985 special permit “to eliminate ‘no further development restriction’ alleged to still exist.” The application was opposed by plaintiff, David Vaillancourt, a resident of a condominium property located within the original 85-acre parcel and allegedly an abutter to the Property. The application was .also opposed by plaintiff, Gilbert C. Campbell, an alleged owner of an easement abutting the Property. Campbell also was the original developer of the 85-acre parcel *497 and the individual who obtained the 1985 approval of the development plan containing the Condition.
As will be described more fully below, the planning board, after hearing, voted to deny a modification of the 1985 special permit upon a motion proposing a specific allowance of up to 45 new condominium units. The planning board, however, failed to file its decision with the Town clerk within 90 days of the hearing date. Gray Wolf then filed a Notice of Constructive Approval declaring, pursuant to G.L.c. 40A, §9, that its application to modify the 1985 special permit to eliminate the “no further development restriction” must be deemed approved. Vaillancourt timely commenced this action, under G.L.c. 40A, §17, to appeal the allowance of the modification of the special permit. Subsequently, an amended complaint was allowed in this action adding Campbell and the Tessi Trust as plaintiffs. Following a trial on the merits, including a view of the land at issue, the Court issues these findings of fact and conclusions of law.
II. Facts
A. Origin of the Condition
On May 31,1984, Gilbert G. Campbell, Inc. (“Campbell, Inc.”) purchased a large tract of land in the Town. Campbell, as president of Campbell, Inc., then proposed a development on approximately 85 acres of the tract. He composed a plan to build a high quality inn and restaurant (later named the Stonehedge Inn) on the property, as well as a condominium complex of approximately 55 units (later known as the Stonehedge Farm Condominium). Campbell was an experienced real estate developer, having been in the business since 1947. To accomplish the development, Campbell proposed that the Town adopt a Planned Unit Development (“PUD”) zoning district for the 85 acres. On May 21, 1985, by unanimous vote at town meeting, the Town adopted the PUD zoning amendment to its zoning bylaws and voted to rezone Campbell, Inc.’s 85 acres as a PUD district. The newly adopted PUD bylaws allowed uses for a hotel, inn and restaurant, as well as for a town house development and other uses. The bylaws required that a proposed development “be allowed as a special permit" by the planning board subject to certain procedures and requirements including approval of the plan by a town meeting. The planning board could grant a special permit only upon finding that the applicant designed the plan in substantial conformity with the preliminary plan presented to town meeting and that the plan met the design requirements of the bylaw.
Campbell, Inc. filed an application, dated July 29, 1985, for a special permit under the PUD district zoning bylaw. On October 21, 1985, the Town planning board approved the plan in a written Summary of Decision. The approval required that “(t]he following qualifications/conditions shall be referenced on the plan.” Number 5 of the qualifications/conditions was that “[a] note shall be added to the final plan before endorsement by the Planning Board indicating that ‘no future development shall be allowed on this PUD site which will increase the density of development or number of occupants over what is allowed by this plan.’ ” The final plan, the Stonehedge Farm II Plan, approved by the planning board contained a handwritten note stating “(n]o future development shall be allowed which will increase the density of development over what is allowed on this plan.” The plan was recorded at the Registry of Deeds on November 13, 1985.[5]
The handwritten note on the plan did not conform exactly to the condition imposed by the planning board for the granting of the special permit. Specifically, the words “or number of occupants” were left out of the handwritten note. The intent of the planning board is more likely reflected in its typewritten Summary of Decision. The condition of “no future development” in that Summary of Decision is the “Condition” referred to in this memorandum of decision.
B. Ownership of the Condominium Land
Following the approval of the development plan, on March 6, 1986, Campbell, Inc. conveyed approximately 52 acres of the 85-acre parcel to Michael F. Rindo, Inc. (“Rindo”). Rindo was to be the builder of the condominium units now known as Stonehedge Farms Condominium. In that deed, Campbell, Inc. reserved an easement to a'24-foot-wide right-of-way, named the bridle path easement, and an easement shown on the plan for a pasture. The purpose of the easement was to allow Campbell, who owned property across Sherburne Road from the 52 acres, to exercise on foot and on horseback along the bridle path and in the pasture.
In November 1986, Rindo executed and recorded a master deed creating the Stonehedge Farm Condominium. The master deed conveyed approximately 11 acres of the 52 acres received from Campbell, Inc. to the Condominium for “Phase I” of the development. Phase I was to consist of four buildings, each with 4 units, for a total of sixteen units. The common area of the Condominium was defined to be the entire acreage in the deed other than the units themselves. The common area was described as “(t]he Condominium Land together with the benefit of, and subject to, all rights, easements, reservations, conditions, and restrictions of record as the same may be in force and applicable.” The deed references the intent of the grantor to construct two additional phases totaling nine residential buildings, containing a total of 36 units. The record before this Court does not reflect when Rindo conveyed the remaining 41 acres received from Campbell, Inc. to the Stonehedge Farm Condominium as part of Phase II and III, but there appears to be no dispute among the parties that the Condominium eventually received ownership of all 52 acres, with additional condominium units built thereon.
*498 Neither the deed from Campbell, Inc. to Rindo nor the deed from Rindo to Stonehedge Farm Condominium made any reference to the PUD development plan for the entire 85 acres, the planning board’s approval of the special permit for the 1985 plan, or the Condition noted on the plan.
On December 22, 1999, Vaillancourt and his wife received a deed for their unit, 30 Derby Lane, of the Stonehedge Farm Condominium. The deed granted them ownership of the unit within the Condominium property and an undivided interest in the common area of the Condominium as set forth in the master deed. Subsequently, the Vaillancourt unit was transferred to Mrs. Vaillancourt who, on December 15, 2003, conveyed the unit to the Tessi Trust. The Tessi Trust is a nominee trust for the benefit of Vaillancourt and his wife. Mrs. Vaillancourt is the sole trustee. The Vaillancourts reside in the unit. From the deck at the back of Vaillancourt’s unit, looking west, the vista includes essentially all of the subject Property. The back of Vaillancourt’s unit appears to be less than three hundred feet from the property line of the subject Property.
C.Ownership of the Subject Property
Following the 1986 approval of the PUD development and special permit, Campbell, Inc., on December 23, 1986, conveyed approximately 30 acres of the original parcel (remaining after conveying approximately 52 acres to Rindo) to Campbell, individually. Subsequently, in 1988, Campbell conveyed this parcel to the Stonehedge Nominee Trust. Campbell and his wife were trustees. By that time, the Stonehedge Inn had been constructed consisting of a main building, 30 guest rooms and a restaurant. The Inn opened for business on December 15, 1988.
In 1997, the Stonehedge Nominee Trust was revised so as to make the Stonehedge Realty Company, a Massachusetts partnership, the sole beneficiary. The partners of Stonehedge Realty Co. were Campbell and Levent S. Bozkurt. Bozkurt had previously been the general manager of the Copley Plaza Hotel in Boston, MA. Bozkurt was hired by Campbell to manage the Stonehedge Inn after it opened in 1988. Later, Bozkurt and Campbell had a series of disagreements which ultimately were resolved in 2001 by Bozkurt purchasing Campbell’s interest. On June 22, 2001, Stonehedge Trust conveyed all of its real estate to Gray Wolf, a Delaware limited liability company created by Bozkurt. The total purchase price paid by Bozkurt to Campbell was $4,900,000. The real estate purchased by Bozkurt, through Gray Wolf, included the approximately 25 acres that is the Property that is the subject of this lawsuit.
D.Changes in Zoning and Development
In 1987, the Town, by town meeting, rescinded its zoning bylaws, including the PUD zoning bylaw. The Town adopted an entirely new set of zoning bylaws. As a result, the Property became zoned as R-1, a zone that permits single-family homes. Nevertheless, no development occurred on the Property.
From 1993 to 2006, the Stonehedge Inn, owned by either Campbell or Gray Wolf, applied for numerous permits from the Town to build additional buildings, including a pool and spa, a wine cave, and an office building on the Property. No opposition was raised by any abutters to these applications. The Town approved the applications without reference to the Condition contained in the 1985 special permit.
E.Gray Wolf Proposal
In 2006, Gray Wolf began looking into the feasibility of further development of the 25-acre Property. A conceptual plan was prepared showing a cluster development of approximately 55 town house condominium units. Gray Wolf then obtained the requisite number of signatures of the residents of the Town to put on the agenda of the town meeting two articles: (1) to rezone the Property from R-l to R-3 (permitting multi-family development including clustered town houses), and (2) to give preliminary approval to the multi-family development as shown on Gray Wolfs conceptual plan to be constructed upon review and approval by special permit from the planning board. The board of selectmen of the Town voted unanimously to support the conceptual plan. Kevin O’Connor, a member of the board of selectmen, testified at trial that the Gray Wolf proposal was consistent with the Town’s 2004 Master Plan and consistent with the surrounding area where other condominium developments have occurred. Also, the planning board, after a public hearing, voted to recommend to the town meeting the zoning change to R-3 for the Properly. The Town meeting then voted on March 14, 2006 to approve both articles. Both articles were passed by an overwhelming majority of approximately 97% of those voting.
F.Application for Special Permit
In August 2007, Gray Wolf filed an application for a special permit with the planning board. The application sought “[m]odification of 10-21-85 PUD Special Permit to eliminate ‘no further development’ restriction alleged to still exist.” Notice to abutters was mailed including to all the owners of units in the Stonehedge Condominium. On October 4, 2007, the planning board held a public hearing. Gray Wolf referenced at the hearing the previous preliminary approval by the vote of town meeting in 2006 of its conceptual development plan. Gray Wolf pointed out that even if a “no further development” restriction were removed, Gray Wolf would still have to go through a laborious and expensive process of obtaining approvals through the Town boards. Gray Wolf also committed to the planning board that as part of the modified condition for the special permit, a maximum of 45 units, instead of the previously planned 55 units shown on the conceptual plan, would be developed. Amotion was made “to recommend the modification to condition #5 of the *499 Special Permit dated October 21, 1985 to read: Applicant agrees to develop said property inline [sic] with the conceptual drawing for up to 45 units (not the 55 in the current conceptual drawing).” The motion was defeated by a three-to-two (3-2) vote.
Following the vote, the planning board was to prepare a written decision. This task fell to Caiyn DeCarteret, chairman of the planning board. According to DeC-arteret, who testified at trial, the written decision was prepared sometime in late December 2007, and left at town hall for members to sign. DeCarteret testified that as a result of a lack of clerical help the written decision, with sufficient signatures of the members of the planning board, was not filed with the Town clerk until January 4, 2008. That date was more than 90 days after the planning board’s October 4, 2007, hearing. On January 3,2008, Gray Wolf filed a Notice of Constructive Approval with the Town clerk indicating that the planning board had failed to render a final decision filed with the Town clerk within 90 days.
In its Notice of Constructive Approval, Gray Wolf noted that the application for modification of the special permit had been constructively approved because of the late filing of the written decision. Thus, Gray Wolf claimed, its application “to eliminate the ‘no further development’ restriction is constructively approved...” Gray Wolf then sent notice, as required by c. 40A, §9, to requisite parties including, within the notice, that an appeal of the constructive approval, pursuant to c. 40A, §17, must be filed in court within 20 days of the date of the Notice of Constructive Approval.
Plaintiffs contend that the planning board intentionally failed to file its decision within 90 days. The planning board through DeCarteret denies that contention. As will be seen by the analysis below, the Court finds that it is irrelevant whether the failure to file timely with the Town clerk was intentional. The late filing invoked the constructive approval rule imposed by statute. It is noted, however, that the untimely decision prepared by DeCarteret made no specific findings. Instead, the decision simply stated the conclusion that “the application to modify the ‘No Further Development’ restriction of the Special Permit, is not warranted by changes in present day circumstances ...” even though the conceptual plan complies with all applicable zoning requirements.
This appeal by Vaillancourt, pursuant to c. 40A, §17, followed in a timely fashion. In this litigation, defendant Gray Wolf asserted cross claims against the members of the planning board (but not the Town, itself) asserting two counts. Both counts seek a declaration that the “no further development” restriction is void and unenforceable. Count One is purportedly brought pursuant to G.L.c. 240, §§10A-10C, and Count Two is brought under the declaratoiy judgment statute, G.L.c. 231A. The members of the planning board entered into an agreement for judgment with respect to the cross claims. DeCarteret testified that the agreement for judgment was entered into because the planning board decided not to defend the lawsuit. Gray Wolf then sought a separate and final judgment on the cross claims pursuant to Mass.R.Civ.P. 54(b). This Court (Haggerty, J.) allowed the Rule 54(b) motion. Plaintiffs appealed. The Appeals Court vacated the separate and final judgment on the cross claims noting that it merely amounted to a stipulation by Gray Wolf and the planning board, and did not include the plaintiffs. The Appeals Court remanded the case to this Court.
III. Analysis and Conclusions of Law
A. Standing Requirement
Only a person “aggrieved” by a decision of a permitting authority has standing to appeal the decision to the Superior Court under G.L.c. 40A, §17. Sweenie v. A.L. Prime Energy Consultants, 451 Mass. 539, 543 (2008). An abutter to the property that is the subject of an application for a special permit, and an abutter to the abutter who is within three hundred feet of the subject property, are defined “parties in interest” under G.L.c. 40A, §11 and are, therefore, presumptively “aggrieved” persons. Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 721-22 (1996); Butler v. City of Waltham, 63 Mass.App.Ct. 435, 440, n.12 (2005). The presumption of standing is, however, rebuttable. If standing is challenged, and evidence is offered in support of such challenge warranting a finding contrary to the presumed fact of aggrievement, the presumption of standing is lost and the burden to demonstrate standing rests with the plaintiffs. Kenner v. Zoning Bd. of Appeals of Chatham, 459 Mass. 115, 118 (2011). Plaintiffs need not prove, for standing purposes only, the ultimate merit of their claims. Instead, they must put forth “credible” evidence to substantiate their allegations. Kenner, 459 Mass. at 118. Credible evidence “has both a quantitative and a qualitative component.” Butler, 63 Mass.App.Ct. at 441. “Quantitatively, the evidence must provide specific factual support for each of the claims of particularized injury the plaintiff has made [and] [qualitatively, the evidence must be of a type on which a reasonable person could rely to conclude that the claimed injury likely will flow from the board’s action.” Id. Determination of standing is a fact issue for the Court. Kenner, 459 Mass. at 119.
1. Vaillancourt Standing
Gray Wolf challenges Vaillancoiirt’s standing on two grounds: (1) he is not the owner of his unit, and (2) he asserts no particularized injury. Each challenge fails for the reasons stated below.
Vaillancourt is a beneficial owner and resident of 30 Derby Lane. Title to the unit is held by a nominee trust, Tessi Trust.[6] While Mass.R-Civ.P. 17(a) permits a trustee of an express trust to prosecute an action on behalf of the trust beneficiaries, it does not require the trustee to do so. The real parties in interest, particularly for a nominee trust, are the beneficiaries of the *500 trust. A real party in interest may prosecute the action in his own name. See, Rules Practice, 6 Mass. Pract. Series §17.4, Smith and Zobel (2006); Vittands v. Sudduth, 49 Mass.App.Ct. 401, 408-10 (2000).
As a beneficial owner of the unit, Vaillancourt is a “party in interest” under c. 40A, §11 and, thus, a presumptively aggrieved person. Vaillancourt’s status as a “party in interest” derives from his unit being less than 300 feet away from the property line of the subject Property owned by Gray Wolf. In addition, as a unit owner, Vaillancourt owns an undivided interest in the common area of the Stonehedge Farm Condominium. That common area directly abuts the subject Property.[7] For all of these reasons, Vaillancourt enjoys the presumption of being an “aggrieved person” who may prosecute this appeal under c. 40A, §17 of the planning board’s action.
“A ‘person aggrieved’ is one who suffers some infringement of his legal rights.” Sweenie, 451 Mass. at 543, quoting Marashlian, 421 Mass. at 721. Here, Vaillancourt asserts the legal right to enjoy the benefit of the Condition put on the entire 85-acre parcel of land (including the Condominium land and Vaillancourt’s unit) by the planning board in 1985 that the parcel would not be developed beyond what was shown on the 1985 plan. Where a condition imposed by a planning board directly benefits a person in the position of an abutter, the abutter has particularized injury to be considered when a modification of that condition is sought. Monks v. Zoning Bd. of Appeals of Plymouth, 37 Mass.App.Ct. 685, 688 (2008), distinguished and explained in Sweenie, 451 Mass. at 544. Accordingly, Vaillancourt has standing to pursue this action.
2. Campbell Standing
Campbell’s claim to standing is more attenuated. He is not an abutter or a qualified abutter to an abutter. The easement (which abuts the subject Property) that he alleges allows use of the bridle path and pasture on the land of the Condominium, is owned by Campbell, Inc. not Campbell, individually. Campbell, Inc. is not a party in this case. Moreover, Campbell testified that he has not utilized the bridle path and pasture easements on the Condominium land for the past 10 years. Thus, Campbell enjoys no presumption as an aggrieved party. Campbell’s interest in opposing Gray Wolfs special permit application derives from his general interest in the neighborhood, as well as a historic interest as the developer who obtained the 1985 special permit with the Condition. He testified that he joined this suit in order to vindicate his reputation as the original developer.[8] Such generalized, indefinite, community interests are insufficient for standing. Campbell cannot assert an infringement of a private right, a private property interest, or a private legal interest if the 1985 special permit is modified. See Harvard Square Defense Fund, Inc. v. Planning Bd. of Cambridge, 27 Mass.App.Ct. 491, 493 (1989). Consequently, Campbell does not have standing to pursue an appeal of the constructive approval of Gray Wolfs special permit application.[9]
B. Ripeness
Gray Wolf contends that Vaillancourt’s appeal under c. 40A, §17 is not ripe for consideration by this Court. Gray Wolf points out that the planning board’s constructive approval of the application for modification of the 1985 special permit is not a final decision to allow Gray Wolf to proceed with construction on the Property. Gray Wolf must apply again to the planning board, as well as to other Town boards and commissions, for permits to proceed with construction after a definitive plan for development is completed and submitted. [10]
It was Gray Wolf, however, that initiated this proceeding by submitting the application for modification of the special permit. It chose to seek a decision from the planning board on the threshold question of whether any further development could occur on the Property. Gray Wolf believed it was important to have a decision on that question before it invested the time and money to prepare definitive plans for construction. Gray Wolf also contended that the 1985 Condition was “void.” In short, Gray Wolf wanted a final decision of the planning board to eliminate the Condition.
Now, with a constructive approval of its application in hand, Gray Wolf argues that Vaillancourt may not challenge such approval. If the Court were to dismiss Vaillancourt’s appeal for lack of ripeness, Gray Wolf would, no doubt, contend that Vaillancourt is barred from challenging the elimination of the “no future development” Condition. The planning board’s constructive approval is, however, a final decision, at least as to the conclusion that some future development may occur on the Properly. Vaillancourt’s appeal of that decision is ripe for review even though the details and scope of a further development are subject to further consideration and decision by the planning board.
C. Review of Constructive Approval 1. Standard of Review
In a G.L.c. 40A, §17 appeal, the Court employs a combination of de novo and deferential analysis. Shirley Wayside Limited Partnership v. Bd. of Appeals of Shirley, 461 Mass. _, _ (February 7, 2012). Findings of fact are made upon the evidence presented and such findings need not give weight to those found by the board. The judge then “determines the content and meaning of statutes and by-laws and ... decides whether the board has chosen from those sources the proper criteria and standards to use in deciding to grant or deny the variance or special permit application.” Id., citing Britton v. Zoning Bd. qfAppeals of Gloucester, 59 Mass.App.Ct. 68, 73-74 (2003). Deference is given to a board’s reasonable interpretation of its own zoning bylaw. Ultimately, the judge determines whether the board has applied the applicable legal standards in an unreasonable, whimsical, capri *501 cious or arbitrary manner, again giving deference to local control over community planning. Id. In making that determination, the question is whether on the facts found by the court any rational board could come to the conclusion being challenged. See Britton, supra, 59 Mass.App.Ct. at 74.
Here, the decision of the planning board that is the subject of review is the constructive approval of Gray Wolfs application to modify the 1985 special permit. Pursuant to G.L.c. 40A, §9, the failure of the planning board to file its decision with the Town clerk within 90 days from the date of hearing must “be deemed to be a grant of the special permit.” The statute makes no distinction between an inadvertent failure to file or an intentional failure to file. Building Inspector of Attleboro v. Attleboro Landfill, Inc., 384 Mass. 109, 111-12 (1981).
“Zoning relief granted constructively is not beyond judicial review. The relief so granted may be tested on appeal under G.L.c. 40A, §17, to determine whether facts exist which would have enabled the board to grant the relief.” Girard v. Bd. of Appeals of Easton, 14 Mass.App.Ct. 334, 338 (1982). In other words, this Court should review the constructive grant of Gray Wolfs application to modify the 1985 special permit applying the standards for review as if the planning board actually had issued a final decision to approve the application.
2. Approval of the Special Permit Modification Is Justified
A condition imposed by a planning board in connection with issuing a special permit may later be modified or eliminated by the planning board. In other words, what a planning board imposes may be taken away.
This principle was recently affirmed by the Supreme Judicial Court in Wendy’s Old Fashioned Hamburgers of New York, Inc. v. Bd. of Appeal of Billerica, 454 Mass. 374 (2009) [“Wendy’s”). “Aboard‘maybe asked by a successful petitioner to modify a condition’ imposed in a special permit or variance decision in light of changed conditions.” Id. at 385, quoting M. Bobrowski, Massachusetts Land Use and Planning Law, §10.07[D] at 314 (2d ed. 2002). So long as the planning board complies with the relevant notice and hearing requirements so that all parties in interest concerning the proposed modification have an opportunity to be heard, the planning board has the authority to amend a previously granted special permit. Barlow v. Planning Bd of Wayland, 64 Mass.App.Ct 314, 319 (2005). “(T]he permit granting authority must again exercise its discretion in weighing the factors relevant to a decision . . . Whether we term the application as a modification of a special permit or a new one, the matter involves the discretion of the planning board.” Id. at 320.
In the present case there are significant changes in circumstances concerning the Property since 1985 that provide the basis for a decision to modify the special permit. By vote of town meeting in 1987, the PUD zoning bylaw that formed the basis for the grant of the 1985 special permit with the Condition was abolished. The Town zoned the Property permitting single-family development. More importantly, in 2006, the town meeting, upon Gray Wolfs request, overwhelmingly voted to change the zoning of the Property to permit multifamily, clustered town houses and to preliminarily approve Gray Wolfs plan for development. Such approval implicitly recognized changes in conditions surrounding the Property over the 21 years since 1985. Those changes were affirmed by the testimony of Kevin O’Connor. Finally, over the years since 1985, the abutting property of the Stonehedge Inn, which also was subject to the original Condition, had been allowed by the Town to be developed further by the addition of several new buildings. Consequently, the planning board would have been justified by the change in conditions to modify the 1985 special permit so as to eliminate the Condition, especially where, pursuant to the town meeting vote and the current zoning by law, the planning board retained the authority to determine approval of the final development plan by special permit.[11]
A decision by the planning board to modify the 1985 special permit as requested by Gray Wolf would not have been legally untenable, whimsical, capricious or arbitrary. Because the planning board could have decided to approve Gray Wolfs application for modification, the constructive approval pursuant to G.L.c. 40A, §9 is fully justified.
Vaillancourt advances two arguments as to why the planning board could not approve the modification of the 1985 special permit so as to eliminate the Condition. First, he contends the Condition was a “public restriction” based upon an agreement between the Town and Campbell that “runs with the land.” Second, he argues that Gray Wolfs application for modification was, in essence, an untimely appeal of the 1985 decision of the planning board that imposed the Condition. Both arguments fail.
With respect to the first argument, Vaillancourt relies upon G.L.c. 184, §26. That section, he argues, provides for a town to hold a public restriction for conservation land (among other uses) that is not subject to the requirements of G.L.c. 184, §§27-30 or the procedural requirements of G.L.c. 184, §32. As a result, Vaillancourt contends that the Condition is an enforceable restriction. The flaw in Vaillancourt’s argument is that the Condition imposed by the grant of the 1985 special permit does not satisfy the requirements of G.L.c. 184, §26. The Condition was not “imposed by covenant, agreement, or otherwise ... in any deed, will or other instrument executed by or on behalf of the owner of the land” and does not purport to “run with the land.” As such, G.L.c. 184, §26 does not apply and Vaillancourfs argument must be rejected.
Vaillancourt’s second argument is based upon Klein v. Planning Bd. of Wrentham, 31 Mass.App.Ct. 777 (1992). The argument is that the time for appealing the imposition of the Condition in 1985 has long since *502 expired and Gray Wolf, as the successor in interest to Campbell, should be estopped now from seeking a modification of the Condition. This argument was expressly rejected by the Supreme Judicial Court in Wendy’s, 454 Mass. at 385, n.28. As described above, where there have been significant changes of conditions regarding the Property since the 1985 approval of the special permit, the planning board had the authority to consider Gray Wolfs application.
3. Gray Wolfs Cross Claims
Gray Wolf sought declarations from this Court by way of two cross claims asserted against the “Defendant Town of Tyngsborough Planning Board.”[12] In response, the members of the planning board entered into an Agreement for Judgment with Gray Wolf for the relief sought by “Prayer for Relief (a)” to both Count One and Count Two of the cross claims. Count One sought a declaration pursuant to G.L.c. 240, §§10A and 10C that the Condition is “void and / or unenforceable. ” Count Two also sought a declaration pursuant to G.L.c. 231A that the Condition is “void and/or unenforceable.” Notwithstanding the Agreement for Judgment described above, the Court declines to enter the declarations sought by the cross claims and hereby dismisses the cross claims for failure to state cognizable claims.
Count One is a putative claim underG.L.c. 240, §§10A and IOC. Section 10A gives the Superior Court jurisdiction to determine the enforceability of a restriction on land as described in G.L.c. 184, §26. The section mandates compliance with certain procedural requirements of stating the names of any persons benefited by the restriction and filing certified copies of the instruments imposing the restriction. As described above, however, the Condition being challenged by Gray Wolf is not a restriction as described in G.L.c. 184, §26. There is no instrument creating a covenant with a binding restriction that runs with the land. Thus, G.L.c. 240, §§10A and IOC are inapplicable. Moreover, the procedural requirements of § 1OA were not complied with. Count One of the cross claims must, therefore, be dismissed.
Count Two of the cross claims is purportedly brought under the general declaratory judgment statute, G.L.c. 231 A. That statute requires that an “actual controversy” exist between the parties and gives the Court the discretion to make a binding declaration. G.L.c. 231A, §1. In the present case the members of the planning board assented to the proposition put forward by Gray Wolf — namely, that the Condition is of no further effect — in two ways. First, the planning board constructively approved Gray Wolfs application to modify the 1985 special permit. Second, they entered into an Agreement for Judgment with respect to Gray Wolfs request. Accordingly, there is no “actual controversy” between Gray Wolf and the planning board. Count Two of the cross claim must be dismissed.
IV. Order
For the reasons stated above, the constructive approval of Gray Wolfs application for a modification of the 1985 special permit is affirmed. Judgment to enter dismissing plaintiffs’ action under G.L.c. 40A, §17 appealing the approval. Judgment shall also enter dismissing the cross claims of Gray Wolf against the members of the planning board.

In most of the pleadings, until recently, Gray Wolf was spelled “Grey” Wolf. The correct spelling appears to be “Gray” Wolf based upon the relevant deeds and the application for special permit.

The planning board’s 1985 approval was not recorded at the Registry of Deeds until August 1996.

Tessi Trust was added as a party plaintiff by amendment to the complaint in January 2011. Gray Wolf sought judgment on the pleadings against Tessi Trust on the ground that Tessi Trust’s c. 40A, §17 appeal was untimely and, thus, barred. This Court (Chemoff, J.) denied the motion holding that Tessi Trust’s appeal related back to Vaillancourt’s timely filing of this action. Given this Court’s conclusion that Vaillancourt has standing to pursue this appeal, Tessi Trust, by its trustee, also has standing.

Gray Wolf points to the Stonehedge Farm Condominium bylaws which give the tmstees of the Condominium the power to conduct litigation on behalf of the unit owners “as to any course of action” involving the common area. It is unclear, however, whether that power resides exclusively with the tmstees or whether a unit owner may pursue rights when the tmstees do not do so. Because Vaillancourt qualifies as an abutter of an abutter to be a presumptive aggrieved person it is unnecessaiy to decide the question.

There was also testimony from Campbell regarding previous business disputes and litigation with Bozkurt, the principal of Gray Wolf. The Court finds that Campbell is motivated, in part, to participate in this lawsuit as a result of animosity towards Bozkurt.

Like Tessi Trust (see fn. 6, supra), Campbell was added as a plaintiff by amendment in January 2011. Because the Court finds that Campbell does not have standing for this appeal, there is no need to address Gray Wolfs argument that Campbell’s appeal is untimely.

In its decision vacating the judgment entered on Gray Wolfs cross claims (see p. 10, supra), the Appeals Court noted that it was “unclear” whether Vaillancourt’s appeal of the constructive approval of Gray Wolfs application for modification of the 1985 special permit was ripe for review.

 Gray Wolf contends that the Condition was “void” and “unenforceable” given the changes in the zoning of the Property. Because of the constructive approval of Gray Wolfs application, it is not necessary to address this argument. Gray Wolf concedes, however, that its plans for construction and development of the Property are subject to approval by the planning board by special permit.

The Town, itself, was not named as a cross claim defendant, only the members of the planning board. The Court doubts whether this pleading is sufficient to state a claim, or to seek a binding declaration, against the Town. Because the cross claims are dismissed, as described in this memorandum, this issue need not be resolved.