RAWINSKI vs. CONNER, MISC 20-000333

































 
 CHERYL RAWINSKI, Trustee of the RAWINSKI FAMILY REALTY TRUST, Plaintiff, v. PETER CONNER, DAVID B. PECK, MICHAEL MAIN, WILLIAM KEOHAN, and EDWARD CONROY, as they are Members of the Zoning Board of Appeals of the TOWN OF PLYMOUTH, and ROBIN WADSWORTH, Trustee of the ROBAWEKA TRUST, Defendants
 MISC 20-000333 
 AUGUST 3, 2021
PLYMOUTH, ss.
SMITH, J.
DECISION














 This matter involves the right of a property owner on Saquish Beach in Plymouth to reconstruct a house on a pre-existing nonconforming lot that was damaged in a severe storm that occurred on March 2, 2018. The owner of the property, Defendant, Robin Wadsworth, Trustee of the Robaweka Trust (the "Robaweka Trust"), obtained a building permit from the Plymouth Inspectional Services Department on May 11, 2020 authorizing the construction of a new house in place of the damaged house. Shortly thereafter, the next-door neighbor, Plaintiff, Cheryl Rawinski, Trustee of the Rawinski Family Realty Trust ("Ms. Rawinski"), filed a petition with the Plymouth Zoning Board of Appeals (the ("Board") challenging the issuance of the building permit to the Robaweka Trust. The Board upheld the decision to issue the building permit and Ms. Rawinski appealed that ruling to this court in accordance with M.G.L. c.40A §17. 





 Before the court are four motions: (1) Plaintiff's Motion to Amend Complaint; (2) Defendant's Motion to Strike Affidavit of Cheryl Rawinski; (3) Defendant's Motion to Dismiss; and (4) Defendant's Motion for Summary Judgment. 





Plaintiff's Motion to Amend Complaint 





 The original plaintiff in this action is Cheryl Rawinski, Trustee of the Rawinski Family Realty Trust. The Rawinski Family Realty Trust is the record owner of lots 132-B-61 and 132- B-181 Saquish Beach, Plymouth. During discovery, it came to light that Cheryl Rawinski is not a trustee of the Rawinski Family Realty Trust. Rather, she is a co-trustee of the Rawinski Living Trust, which is the beneficiary of the Rawinski Family Realty Trust. Ms. Rawinski now seeks leave to amend her complaint to substitute herself as trustee of the Rawinski Living Trust, beneficial owner of the Rawinski Family Realty Trust, in place of the original named plaintiff. 





 The Robaweka Trust opposes this request on the grounds that Ms. Rawinski was not the trustee of the original named plaintiff and, therefore, lacked standing to commence this appeal in the first place. The Robaweka Trust argues that the recent decision in Styller v. Zoning Bd. of Appeals of Lynnfield, 487 Mass. 588 (2021) precludes the court from allowing Ms. Rawinski to amend the complaint to cure this defect and satisfy the standing requirement necessary to continue with this action. 





 Whether Ms. Rawinski should be allowed to amend her complaint is a matter of discretion for this court. A motion to amend a pleading should be allowed unless some good reason appears for denying it. Castellucci v. United States Fid. & Guar. Co., 372 Mass. 288 , 289 (1977). The fact that the original plaintiff in a zoning appeal may not have had standing is not a reason to deny an amendment to allow the substitution of a party that does have standing. Rafferty v. Sancta Maria Hosp., 5 Mass. App. Ct. 624 , 626-627 (1977). This court does not read the decision in Styller v. Zoning Bd. of Appeals of Lynnfield to limit the court's discretion to allow the amendment of a complaint to add a party that has standing. The Styller case addressed standing in the context of whether the trial court could retain jurisdiction over a matter commenced by a property owner who later sold his property to an unrelated third-party. It does not stand for the proposition that a named plaintiff in a zoning appeal is barred from adding or substituting parties by amendment to maintain or achieve standing. 





 This action was timely filed on behalf of the owner of the abutting property, the Rawinski Family Realty Trust, albeit by a person who was not a trustee of the trust. That Ms. Rawinski was not a trustee of the Rawinski Family Realty Trust but, rather, the trustee of the beneficiary of that trust, is not fatal to her action. This court must allow an amendment unless good reason exists for denying it. The parties have completed discovery and the Robaweka Trust has filed a motion for summary judgment. The amendment sought by Ms. Rawinski does not raise any new issues or legal theories, nor will it require further discovery to be taken by the parties. Neither of the defendants will be prejudiced by the amendment. The Plaintiff's Motion to Amend Complaint is allowed. 





Defendant's Motion to Dismiss 





 The Robaweka Trust has moved to dismiss Ms. Rawinski's original complaint on the grounds that Ms. Rawinski lacked standing because she was not the trustee of the Rawinski Family Realty Trust at the time she commenced this action. For the reasons stated in my decision to allow the Plaintiff's Motion to Amend Complaint, the Robaweka Trust's Motion to Dismiss for lack of standing is denied as moot.





Defendant's Motion to Strike Affidavit of Cheryl Rawinski 





 The Defendant's Motion to Strike Affidavit of Cheryl Rawinski is also denied. To the extent that Ms. Rawinski's affidavit differs in substance in a material way from her deposition, I have taken that into account in ruling on the Defendant's Motion for Summary Judgment. 





Defendant's Motion for Summary Judgment 





 The Robaweka Trust seeks a ruling on summary judgment that the Board's decision to uphold the issuance of the building permit was authorized by the Plymouth zoning bylaw. While there are certain disputed facts urged by Ms. Rawinski as reflected in the summary judgment record, the material facts are not in dispute. I find the following facts are undisputed for the purposes of ruling on the motion for summary judgment. [Note 1] 





 1. The Robaweka Trust owns oceanfront property known as Lots 132-B-62A and 132-B-182A in the beach community commonly referred to as Saquish Beach in Plymouth. Fact No. 1. The property is in the R20SL residential zoning district under the Plymouth zoning bylaw and zoning map. Joint Exh. E. 





 2. The Robaweka Trust property has been improved by a cottage-type dwelling for more than fifty years and has been used seasonally by family members during that time. Fact Nos. 1, 6. 





 3. The Rawinski Family Trust owns the abutting property known as 132-B-61 and 132-B-181 Saquish Beach which also fronts on the ocean. Fact No. 2. 





 4. The Rawinski property is improved by a "front cottage" and "back cottage" which have been in existence for many years. The Rawinski family uses its property seasonally. Fact No. 5. 





 5. The Robaweka Trust and Rawinski families have been neighbors on Saquish Beach for over 50 years. Fact No. 2. 





 6. On March 2, 2018, the cottage on the Robaweka Trust property was "essentially destroyed" by a massive storm rendering it uninhabitable. Fact No. 6; Joint Exh. J. At the time of the storm, the Robaweka Trust property was a pre-existing nonconforming use or structure under the Plymouth zoning bylaw. Joint Exh. E. 





 7. Following the storm, Ms. Rawinski testified in deposition that she saw activity on the Robaweka Trust property which included the construction of a fence around the damaged cottage debris, kayaks at the property, and work at the property during the off-season. Between March 2018 and September 2018, Ms. Rawinski observed "big gas tanks were moved onto the deck, onto a shed area with a deck . . . . There was removal of a deck that was kind of like on our property was moved away and clean up . . . the fence . . ." In 2018, 2019 and 2020, she saw chairs on a deck on the Robaweka Trust property. After the storm, Ms. Rawinski noticed that a new deck with a shed on top of it had been constructed on the Robaweka Trust property. Fact Nos. 32-33. 





 8. No later than July 2018, the Robaweka Trust hired VTP Associates, Inc., land surveyors and civil engineers, to prepare a topographic site plan of its property in connection with plans to construct a new dwelling on the property. Joint Exh. H, J. Over the course of the ensuing 15 months, the VTP Associates plan went through 5 revisions dated November 9, 2018, April 19, 2019, June 12, 2019, June 26, 2019, and October 25, 2019. Joint Exh. H. 





 9. Prior to June 2019, the Robaweka Trust hired Anderson Structural Engineers, Inc. to prepare structural engineering drawings for the reconstruction of a dwelling on its property. Anderson Structural Engineers, Inc. issued a set of structural engineering drawings dated June 14, 2019. Those plans indicate that they were part of a "conservation submittal." Joint Exh. E. 





 10. On July 3, 2019, the Plymouth Conservation Commission issued an order of conditions approving work at the Robaweka Trust property as part of the reconstruction of the cottage. Joint Exh. J. 





 11. On November 22, 2019, the Robaweka Trust filed a "Residential Zoning Permit Application" with the Plymouth Department of Inspectional Services. Joint Exh. F. That application generally described the proposed work to be the replacement of the existing house damaged in the storm. A set of construction plans was submitted with the application. Joint Exh. F. 





 12. On November 27, 2019, the Plymouth Department of Inspectional Services issued a decision approving the "Residential Zoning Permit." Joint Exh. F. 





 13. On January 14, 2020, the Robaweka Trust received a permit to demolish the cottage that had been damaged by the March 2018 storm. Fact No. 8. 





 14. The original construction plans for the new dwelling went through approximately six revisions as a result of communications between the Robaweka Trust and town officials. Fact No. 9. 





 15. On April 20, 2020, the Plymouth Board of Health issued a Disposal System Construction Permit to the Robaweka Trust. Joint Exh. I. 





 16. On May 11, 2020, the Plymouth Inspectional Services Department issued a building permit authorizing construction of a new dwelling on the Robaweka Trust property. Fact No. 10. 





 17. Around the same date, the Robaweka Trust began to demolish the structures that remained on its property since the storm of March 2018. Joint Exh. E, Finding 3.





 18. On June 8, 2020, the Rawinski Trust filed a petition with the Board appealing the issuance of the building permit to the Robaweka Trust. Joint Exh. D; Fact No. 11. In its petition, the Rawinski Trust argued that "the site does not meet the definitions of a 'Lot' for building purposes and the proposed buildings do not meet the Dimensional Table requirements with respect to lot size, frontage, setbacks or lot coverage." Joint Exh. E, Finding #4. 





 19. On July 7, 2020, the Plymouth Planning Board issued a memorandum to the Board recommending that the Board uphold the decision of the Inspectional Services Department to issue a building permit to the Robaweka Trust. Joint Exh. H; Fact No. 26. 





 20. On July 15, 2020, the Board voted to deny Ms. Rawinski's appeal in a decision that was filed with the town clerk's office on July 28, 2020. Joint Exh. E; Fact Nos. 13, 29, 30. 





 21. In its decision, the Board made the following findings that are relevant to my decision on this motion: 





 - The Robaweka Trust property was "previously impacted by storms with existing dwellings or structures damaged or destroyed." (Finding #1) 





 - The Robaweka Trust property is a pre-existing nonconforming lot that was created prior to the enactment of the zoning bylaw. (Finding #5) 





 - As a pre-existing nonconforming lot, the structure on the Robaweka Trust property may be reconstructed as a matter of right under Section 203-9.D of the bylaw if the Building Commissioner determines that the proposed reconstruction does not increase the non-conforming nature of the residential structure or that the proposed reconstruction conforms to the minimum yard requirements described in Section 203-9.D.1.b. (Finding #5) 





 - Based on the plans approved by Building Commissioner, the proposed structure conforms to the minimum yard requirements set forth in Section 203-9.D.1.b. (Findings #6, 7) 





 - The height of the proposed structure conforms to the 35-foot height limitation of the zoning bylaw. (Finding #5) 





 - The proposed structure will provide a larger setback from the Rawinski property than the original cottage that existed prior to the March 2018 storm. (Finding #7) 





 - There is also an overall reduction in the structural square footage and lot coverage of approximately 411.76 square feet as compared with the structures that existed on the Robaweka Trust property prior to the March 2018 storm. (Finding #8) 





Joint Exh. E. 





 22. On August 12, 2020, Ms. Rawinski filed an appeal of the Board's decision to this court under M.G.L. c.40A §17. Fact No. 27. 





The Plymouth Zoning Bylaw - Joint Exh. K 





 23. Subsection D of Section 203-9 of the zoning bylaw, entitled "Exception for Nonconforming Single- and Two-Family Dwellings," provides, in relevant part: 





 1. Notwithstanding the foregoing requirements, a Pre-existing Nonconforming Single- and Two-Family Residence may be reconstructed, extended, altered, or structurally changed by-right, as follows: 





 a. upon a determination by the Building Commissioner that such proposed reconstruction, extension, alteration, or change does not increase the nonconforming nature of the residential Structure, or, 





 b. where the alteration, reconstruction, enlargement, extension or structural change to a Single- and Two-Family residential Structure conforms to the Yard requirements applicable at the time of the original construction or, if there were none at the time, to the following minimum requirements: 





 i. Front Yard: 20 feet 





 ii. Side Yard: 10 feet 





 iii. Rear Yard: 10 feet 





 24. Subsection E of Section 203-9, entitled "Loss of Protected Status by Non-Use" provides that 





 "[a] Pre-existing Nonconforming Use or Structure which has not been used for a period of 2 years shall lose its protected status and be subject to all provisions of this Bylaw." 





 25. Subsection F of Section 203-9, entitled "Reconstruction after Natural Catastrophe or Voluntary Demolition" provides: 





 A Pre-existing Nonconforming Structure may be reconstructed after a natural catastrophe or other involuntary destruction, or after voluntary demolition in accordance with the following provisions: 





 1. Reconstruction of a Structure after voluntary demolition shall promptly commence and be completed within one year after the date of demolition. 





 2. Reconstruction after damage from a natural catastrophe shall commence promptly and be completed with two years of the destructive event, which time may be extended by Special Permit from the Zoning Board of Appeals for good cause shown, which may include but not be limited to delay in receipt of insurance proceeds or governmental grants to fund the reconstruction, medical or other disability or need for treatment of the owner. 





 3. A Pre-existing Nonconforming Structure as reconstructed pursuant to this Section shall be located on the same footprint as the original Structure, and shall not exceed the original Structure in volume or area, but any Pre-existing Nonconforming Structure or portion thereof may be moved in a manner which decreases its nonconformity. 





Joint Exh. J. 





Discussion 





 Summary judgment is appropriate where there are no issues of genuine material fact and the moving party is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers Insolvency Fund, 424 Mass. 275 , 283 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706 , 711 (1991). In determining whether genuine issues of fact exist, the court must draw all inferences from the underlying facts in the light most favorable to the party opposing the summary judgment motion. White v. Univ. of Mass. at Boston, 410 Mass. 553 , 556-557 (1991). To prevail, the moving party must affirmatively demonstrate that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14 , 17 (1989). 





 In the instant case, there are no material facts in dispute. The question before the court is whether the Board erred in upholding the decision of the Plymouth Inspectional Services Department to issue a building permit to the Robaweka Trust to construct a new dwelling on its pre-existing nonconforming property. The answer is found in the reasonable interpretation of the Plymouth zoning bylaw. 





 The interpretation of a zoning bylaw is a question of law for the court to be determined by ordinary principles of statutory construction, with some measure of deference given to the local board's interpretation. Framingham Clinic, Inc. v. Zoning Bd. of Appeals of Framingham, 382 Mass. 283 , 290 (1981); APT Asset Mgmt., Inc. v. Board of Appeals of Melrose, 50 Mass. App. Ct. 133 , 138 (2000); Bldg. Comm'r of Franklin v. Dispatch Communications of New England, 48 Mass. App. Ct. 709 , 713 (2000). The court first looks to the language of the bylaw as the principal source of insight into the intent of the bylaw. Shirley Wayside Ltd. P'ship v. Bd. of Appeals of Shirley, 461 Mass. 469 , 477 (2012). When the meaning of the language is plain and unambiguous, the court should enforce the bylaw according to its plain wording unless literal construction would yield an absurd or unworkable result. Commonwealth v. DeBella, 442 Mass. 683 , 687 (2004). In so doing, the court should endeavor to interpret the bylaw to give effect to all its provisions so that no provision will be inoperative or superfluous. Connors v. Annino, 460 Mass. 790 , 796 (2011). Where the bylaw does not furnish a definition for a word or phrase, the court should give the word or phrase its usual and accepted meaning as long as the meaning is consistent with the purpose of the bylaw. Eastern Point, LLC, 74 Mass. App. Ct. 481 , 486-487 (2009). 





 Where ambiguities exist in the language of the bylaw, the court should defer to the local board's reasonable construction of its own bylaw because the local board is deemed to have special knowledge of the history and purpose of its bylaw. Shirley Wayside Ltd. P'ship v. Bd. of Appeals of Shirley, 461 Mass. 469 , 475 (2012); Deadrick v. Zoning Bd. of Appeals of Chatham, 85 Mass. App. Ct. 539 , 545 (2014); Petrillo v. Zoning Bd. of Appeals of Cohasset, 65 Mass. App. Ct. 453 ,456 (2006). If the board's interpretation of its bylaw is reasonable, the court may not substitute its judgment. Tanner v. Bd. of Appeals of Boxford, 61 Mass. App. Ct. 647 , 649 (2004). Such deference, however, should be given only when the board's interpretation is reasonable. Pelullo v. Croft, 86 Mass. App. Ct. 908 , 909 (2014). 





 The Plymouth zoning bylaw sets forth its rules concerning pre-existing nonconforming uses and structures in Section 203-9. Generally, this section prohibits the enlargement or alteration of a pre-existing nonconforming use or structure without express authorization of the Board by special permit. There is one exception to this general rule. Section 203-9.D permits as a matter of right the reconstruction, extension, alteration, or structural change to a pre-existing nonconforming single or two-family dwelling so long as the project does not increase the nonconforming nature of the structure or where the project conforms to the yard requirements of the bylaw at the time of the original construction or, if there were none at the time, to the minimum requirements described in subsection D.1.b. Section 203-9.D echoes the second "except" clause of Chapter 40A, §6 which provides that changes to a pre-existing nonconforming residential structure that do not increase the nonconformity or create an additional, new nonconformity may proceed as a matter of right. See Bjorklund v. Zoning Bd. of Appeals of Norwood, 450 Mass. 357 (2008); Deadrick v. Zoning Bd. of Appeals of Chatham, 85 Mass. App. Ct. 539 (2014). 





 In the case of the Robaweka Trust, it is undisputed that the property enjoyed protected status as a pre-existing nonconforming use or structure at the time of the March 2018 storm. The nonconformities were the size of the lot and its lack of frontage. It is also undisputed that the reconstruction of the cottage proposed by the Robaweka Trust will not increase the nonconforming nature of the structure (subsection D.1.a) and will comply with the applicable yard requirements set forth in subsection D.1.b. Having met both requirements of Section 203- 9.D.1, the proposed reconstruction of a dwelling on the property is permitted as a matter of right. That would be the end of the inquiry but for Ms. Rawinski's assertion that the Robaweka Trust property lost its protection as a lawful pre-existing nonconforming use or structure because of the passage of time between the March 2018 storm and the issuance of the building permit on May 11, 2020. 





 Ms. Rawinski makes two distinct arguments both of which, if successful, would preclude the reconstruction of any structure on the Robaweka Trust property. First, Ms. Rawinski cites Section 203-9.E and argues that the Robaweka Trust property lost its protected status as a pre existing nonconforming use or structure because it failed to use the damaged cottage for a period in excess of 2 years following the March 2018 storm. Rawinski asserts that the term "use" in Section 203-9.E was intended to require habitable use of a structure such that the failure to inhabit the structure for more than 2 years results in the forfeiture of its protected status. Second, Ms. Rawinski argues in the alternative that Section 203-9.F precludes the issuance of a building permit because the Robaweka Trust failed to complete reconstruction of its cottage within the timeframes set forth in that subsection. I will address each argument in the order presented by Ms. Rawinski. 





 1. Loss of Protected Status Under Section 203-9.E 





 Regarding Ms. Rawinski's first argument, the loss of protected status for non-use in Section 203-9.E finds its origin in M.G.L. c.40A, §6 which provides that a zoning bylaw may regulate nonconforming uses and structures abandoned or not used for a period of two years or more. The vast majority of the cases which have addressed the phrase "not used for a period of two years or longer" have involved a pre-existing nonconforming use where the courts applied the familiar Powers test to determine whether an alteration of a previous protected use will subject the resulting use to current zoning bylaws. Powers v. Building Inspector of Barnstable, 363 Mass. 648 (1973). In this case, Ms. Rawinski does not argue that the reconstruction of the new cottage by the Robaweka Trust is a change in the use of the property. Rather, she argues that the failure of the Robaweka Trust family to physically occupy the cottage on the property as a habitable dwelling for 2 years following the March 2018 storm should result in the loss of its protected status as a pre-existing nonconforming use or structure. The plain language of the Plymouth zoning bylaw in light of the undisputed facts belies this conclusion. 





 The Plymouth zoning bylaw defines a "pre-existing nonconforming use or structure" as follows: 





 "As applied to a Use or Structure, that which is lawfully in existence or lawfully begun prior to the effective date of the first Zoning Bylaw in the Town of Plymouth, or prior to the effective date of any amendment to the Zoning Bylaw which first prohibited or required a Special Permit for the lawful conduct of the Use or Structure." 





 The language of Section 203-9.E provides that a pre-existing nonconforming use or structure "which has not been used for a period of 2 years shall lose its protected status and be subject to all provisions" of the Plymouth zoning bylaw. While the Plymouth zoning bylaw does not otherwise define the phrase "pre-existing nonconforming use or structure," there is nothing in the bylaw that suggests that Section 203-9.E is intended to eliminate the protected status of a pre existing nonconforming structure because a cottage, located in a residential zoning district, is not used as a habitable dwelling for a period of 2 years. The word "habitable" is not used in the bylaw nor is there other language that would justify interpreting Section 203-9.E to require that a structure be inhabited or occupied in order to maintain its protected status. I decline to insert the concept of habitability into Section 203-9.E where there is no language in the bylaw to support it. So long as a property or structure is used by its owners in a manner that is consistent with a residential use in the R20SL residential zoning district, the property or structure retains its protected status. 





 This interpretation of Section 203-9.E is confirmed by Section 203-9.F.2 which allows the owner of a pre-existing nonconforming structure a 2-year window to "reconstruct" a single or two-family dwelling after damage by a catastrophic event or longer for good cause shown. If Section 203-9.E was intended to equate an owner's failure to inhabit a dwelling during the 2 years after its destruction in a natural catastrophe with abandonment or nonuse sufficient to eliminate the property's protected status, subsection 203-9.F.2 would not acknowledge that the 2-year window for reconstruction may be extended based on the circumstances of each case. 





 Furthermore, the undisputed facts establish that the Robaweka Trust used its property in ways that are consistent with a residential use even though the cottage was rendered uninhabitable by the March 2018 storm. First, the damaged cottage remained on the lot following the storm. Second, starting in the summer of 2018 and concluding in May 2020, the trust methodically pursued the multiple local approvals necessary for the issuance of a building permit to construct a new cottage in place of the damaged cottage. Those approvals included an order of conditions from the conservation commission in July 2019, a residential zoning permit from the inspectional services department in November 2019, a demolition permit from the inspectional services department in January 2020, a disposal system construction permit from the board of health in April 2020, and the building permit under review which issued on May 11, 2020. Third, in 2018, members of the Robaweka Trust family secured the damaged cottage by erecting a fence around it. Fourth, they constructed a shed and a make-shift deck on which they placed a grill and folding chairs which Ms. Rawinski acknowledged in deposition that she observed in 2018, 2019, and 2020. Finally, they undertook some seasonal clean-up of the property in the months after the March 2018 storm. 





 I conclude that the activities engaged in by the Robaweka Trust family following the destruction of the cottage in the March 2018 storm are consistent with the types of uses one would make of a residential property even where the existing structure has been rendered uninhabitable by a storm. [Note 2] There was no cessation of use of the property except for that fact that the family could not live in the cottage due to its damaged condition. Moreover, the extended period of time between the March 2018 storm and the issuance of the building permit in question was due, at least in part, to the vagaries of the local permitting process which required multiple permits from multiple local boards before reconstruction of the cottage could commence. It is not reasonable to conclude that Section 203-9.E was intended to penalize the Robaweka Trust for the length of a process over which it had little control. Therefore, I conclude that the Robaweka Trust property did not lose its protected status as a pre-existing nonconforming use or structure as a result of its failure to make habitable use of the damaged cottage for 2 years following the March 2018 storm. The Board's decision to uphold the building commissioner's issuance of the building permit is well-supported by the language of the zoning bylaw in light of the undisputed facts. 





 2. Failure to Reconstruct Within the Timeframes in Section 203-9.F 





 Ms. Rawinski argues, alternatively, that the building permit was wrongfully issued by the Inspectional Services Department because the Robaweka Trust failed to comply with either of the timeframes set forth in Section 203-9.F for the reconstruction of its cottage. She argues that the bylaw's intent is to eliminate a property's pre-existing nonconforming status if the owner fails to complete its reconstruction project within the timeframes provided. The language of the bylaw does not support such a draconian outcome. 





 As a starting point, the decision of the Board to uphold the issuance of the building permit to the Robaweka Trust did not mention Section 203-9.F. Joint Exh. E. Rather, the Board evaluated the project and upheld the issuance of the building permit based on the property's protected status under Section 203-9.D. That the Board did not address whether the timeframes in Section 203-9.F were applicable to the Robaweka Trust project implies that the Board determined that they were not. That determination is entitled to deference by this court so long as it is not unreasonable. Tanner v. Bd. of Appeals of Boxford, 61 Mass. App. Ct. 647 , 649 (2004). 





 However, there are, at least, two reasonable interpretations of the bylaw that support the Board's failure to address the applicability of Section 203-9.F to the Robaweka Trust project. First, Section 203-9.F applies to the reconstruction of a pre-existing nonconforming structure of any kind, but limits the location of that reconstruction to the "same footprint as the original Structure, and shall not exceed the original Structure in volume or area, . . ." Section 203-9.D, on the other hand, applies only to single or two-family dwellings and allows, as a matter of right, a broader scope of reconstruction that includes the extension, alteration, or structural change in the dwelling. It would not be unreasonable for the Board to have concluded that the Robaweka Trust project was not governed by the more restrictive limitations of Section 203-9.F.3 because the trust had the right to extend, alter, or structurally change the design of the original cottage which could result in an increase in the volume or area of the original cottage so long as the other requirements of Section 203-9.D were met. 





 An alternative interpretation of Section 203-9.F is that, if applied to the Robaweka Trust project, the timeframes for reconstruction would not have prohibited the issuance of a building permit for the reconstruction of the trust's cottage. The first timeframe in subsection 1 provides that when a pre-existing nonconforming structure is voluntarily demolished, reconstruction "shall promptly commence and be completed within one year after the date of demolition." The second timeframe in subsection 2 provides that in circumstances where a pre-existing nonconforming structure is damaged from a natural catastrophe, reconstruction "shall commence promptly and be completed within two years of the destructive event, which may be extended by Special Permit . . . for good cause." The zoning bylaw does not define the term "promptly" nor does it give an exclusive list of what constitutes "good cause" for an extension of time under subsection 2. Significantly, there is nothing in Section 203-9.F that attaches a negative consequence, namely, the loss of the protected status as a pre-existing nonconforming structure, to the failure of an owner to complete construction within either timeframe. 





 If the Board had reviewed the Robaweka Trust project as a voluntary demolition under subsection 1, the trust would have had one year after "voluntary" demolition to "promptly commence" and complete reconstruction. Because demolition of the Robaweka Trust cottage took place in May 2020, the deadline for the trust to complete the project would have been in May 2021 which, but for this appeal, might have been achieved. Under that scenario, the project would have met the timeframe of subsection 1. 





 Alternatively, if the Board had reviewed the Robaweka Trust project as a reconstruction after a natural catastrophe under subsection 2, the trust would have had two years to complete construction measured from the date of the "destructive event," but could have requested additional time upon a showing of good cause. The undisputed facts are that the Robaweka Trust promptly commenced the process of reconstruction of the cottage starting in July 2018 when it began pursuing the several local permits required for construction in a sensitive beachfront area. The dates of the permits issued to the Trust, plus the multiple revisions to the project drawings that are part of the summary judgment record, reflect that the trust pursued the approvals for reconstruction of the damaged cottage with all deliberate speed. Given these facts, it is reasonable to conclude that the Board could have issued a special permit to extend the time for the Robaweka Trust to complete its project had the Board chosen to address the time for construction under subsection 2. 





 Under either timeframe, the bylaw does not authorize the Board or the building commissioner to declare that the protected status of a pre-existing nonconforming dwelling is lost because of an owner's failure to strictly comply with a date for completion of construction. This conclusion is supported by a broader review of the Plymouth zoning bylaw and the requirement placed on the Robaweka Trust to also obtain a zoning permit under Section 202.2 before it applied for a building permit and commenced construction of its new cottage. 





 Section 202.2 requires that all projects obtain a zoning permit before any construction is undertaken and that the zoning permit "shall expire if the Use or construction authorized thereby has not begun within one year of the date of issuance, and in the case of construction, is not continued through to completion as continuously and expeditiously as reasonably possible." The Robaweka Trust obtained such a zoning permit on November 27, 2019. Joint Exh. F. Therefore, under Section 202.2, it had until November 27, 2020 to commence reconstruction of its cottage, which is 2 years and 8 months after the March 2018 storm and well beyond the 2-year timeframe to complete construction called for under Section 203-9.F.2. 





 Because the requirements for commencing and completing construction under Section 203-9.F.2 and under Section 202.2 are wholly inconsistent with one another, their application to a pre-existing nonconforming structure damaged by a storm creates an ambiguity. Where there is an ambiguity in the bylaw, the court must defer to the local board's reasonable construction of its own bylaw. Shirley Wayside Ltd. P'ship v. Bd. of Appeals of Shirley, 461 Mass. 469 , 475 (2012); Deadrick v. Zoning Bd. of Appeals of Chatham, 85 Mass. App. Ct. 539 , 545 (2014); Petrillo v. Zoning Bd. of Appeals of Cohasset, 65 Mass. App. Ct. 453 ,456 (2006). However, the Board did not address this conflict in the timeframes for construction under Sections 203-9.F.2 and 202.2 which is further confirmation that it did not interpret Section 203-9.F to apply to the Robaweka Trust project. 





 Regardless, one reasonable interpretation of the bylaw that gives effect to these conflicting timeframes is that they are intended to promote a goal of the Plymouth zoning bylaw that construction, once started, be completed continuously and as expeditiously as reasonably possible; hence the last phrase of Section 203-9.F.2 which allows the owner more than 2 years to complete reconstruction of a storm-damaged dwelling if good cause exists and the open-ended construction timeframe of Section 202.2 so long as construction is started within 1 year of the issuance of a zoning permit and is completed as continuously and expeditiously as possible. This interpretation anticipates that the Board and the building commissioner will exercise reasonable discretion when enforcing the timeframes of Section 203-9.F and 202.2. This interpretation is also consistent with the absence of language in either section that empowers the Board or the building commissioner to strip a property of its pre-existing nonconforming status if these inconsistent timeframes for construction are not met. 





 Based on the language of Section 203-9.D and 203-9.F, it was reasonable for the Board to uphold the decision of the building commissioner to issue a building permit to the Robaweka Trust under Section 203-9.D without applying the timeframes of Section 203-9.F. 





Conclusion 





 For the foregoing reasons, I find that the Board had a rational basis to uphold the decision of the building commissioner to issue a building permit to the Robaweka Trust. See Eastern Point, LLC v. Zoning Bd. of Appeals of Gloucester, 74 Mass. App. Ct. 481 , 486 (2009); Davis v. Zoning Bd. of Chatham, 52 Mass. App. Ct. 349 , 356 (2001). The Board's application of Section 203-9.D to the Robaweka Trust project and its findings that the project satisfies the requirements for reconstruction under that section are supported by the record and consistent with the reasonable interpretation of the Plymouth zoning bylaw. As there are no disputes of material fact, the Robaweka Trust's motion for summary judgement is allowed and judgment shall issue in favor of the Defendants, Robin Wadsworth, Trustee of the Robaweka Trust and the Members of the Plymouth Zoning Board of Appeals, and the Plaintiff's Amended Complaint shall be dismissed with prejudice. 





FOOTNOTES
[Note 1] I will reference the Joint Statement of Material Facts by agreed number and exhibit letter unless otherwise stated. 

[Note 2] This conclusion is also consistent with the deposition testimony of Paul McAuliffe, Building Commissioner and Zoning Enforcement Officer for the Town of Plymouth, that he has applied a broad definition of the term "use" when enforcing the provisions of subsection 203-9 for pre-existing nonconforming uses or structures. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.